**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION**

| | | |
|---|---|---|
| CHAD MARTIN HELDT, CHRISTI W. JONES, SONJA CURTIS, and CHERYL A. MARTIN, individually and on behalf of all similarly situated individuals | * * * * * | |
| *Plaintiffs,* | * | |
| v. | * | Case 3:13-cv-3023-RAL |
| | * | |
| PAYDAY FINANCIAL, LLC, d/b/a Lakota Cash and Big Sky Cash; WESTERN SKY FINANCIAL, LLC, d/b/a Western Sky Funding, Western Sky, and Westernsky.com; CASHCALL, INC; and WS FUNDING, LLC, | * * * * * * | |
| *Defendants.* | * | |

**Addendum to Proposed Intervenors' Motion to
Intervene to Object to the Proposed Settlement and to
Continue the Preliminary Approval Hearing by 90 days**

Judith K. Zeigler
JUDITH K. ZEIGLER LAW, PC
P.O. Box 1448
Sioux Falls, SD 57101-1448
(605) 222-8649 (telephone)
(888) 231-0577 (facsimile)
judy@jkzlaw.com

Matthew W.H. Wessler*
Deepak Gupta*
GUPTA WESSLER PLLC
1735 20th Street, NW
Washington, DC 20009
(202) 888-1741 (telephone)
(202) 888-7792 (facsimile)
matt@guptawessler.com

\* *Pro hac vice* admission pending

*Counsel for Proposed Intervenors
(Additional counsel listed on next page)*

Dated: November 18, 2015

*Caption continued from cover page:*

Mona L. Wallace
John S. Hughes
WALLACE & GRAHAM, P.A
525 N. Main Street
Salisbury, NC  28144
(704) 633-5244
mwallace@wallacegraham.com
jhughes@wallacegraham.com
*Counsel for Thomas Brown, Monica Johnson,*
*Melinda Long, Renee Holmes, Kevin Hayes,*
*Leslie Jan Lydon and Elizabeth Jackson (North*
*Carolina)*
*Counsel for Abraham Inetianbor (Florida)*

Janet R. Varnell
VARNELL & WARWICK, P.A.
P.O. Box 1870
The Villages, FL 32158
(352) 753-8600
jvarnell@varnellandwarwick.com
*Counsel for Abraham Inetianbor (Florida)*

Daniel A. Edelman
James O. Latturner
Tara L. Goodwin
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
*Counsel for James Binkowski, Deborah*
*Jackson, and Linda Gonnella (Illinois)*

Robert R. Sparks
STRAUSS TROY CO., LPA
150 East Fourth St.
Cincinnati, OH 45202
(513) 629-9417
rrsparks@strausstroy.com
*Counsel for Jeffrey Moore (Kentucky)*

Matthew T. Sanning
224 Main St.
Augusta, KY 41002
mattsanning@windstream.net
*Counsel for Jeffrey Moore (Kentucky)*

Nathan DeLaurantey
Heidi N. Miller
DELADURANTEY LAW OFFICE
LLC
735 W. Wisconsin Ave., Suite 720
Milwaukee, WI 53233
(414) 377-0518
nathan@dela-law.com
*Counsel for Lisa Walker (Wisconsin)*

Thomas J. Lyons, Jr.
CONSUMER JUSTICE CENTER,
P.A.
367 Commerce Court
Vadnais Heights, MN 55127
(651) 770-9707
Tommycjc@aol.com
*Counsel for Lisa Walker (Wisconsin)*

James Hurt
HURT STOLZ, P.C.
345 West Hancock Avenue
Athens, GA 30601
(706) 395-2750
jhurt@hurtstolz.com
*Counsel for Joshua Parnell (Georgia)*

Chris Armor
ARMOR LAW, LLC
160 Clairemont Ave., Suite 200
Decatur, GA 30030
 (678) 690-8489
chris.armor@armorlaw.com
*Counsel for Joshua Parnell (Georgia)*

## STATEMENT OF INTEREST BY NORTH CAROLINA PLAINTIFFS

1.     Pursuant to Federal Rule of Civil Procedure 24(c), this statement of interest is filed on behalf of Thomas Brown, Monica Johnson, Melinda Long, Renee Holmes, Kevin Hayes, Leslie Jan Lydon and Elizabeth Jackson,[1] who are Plaintiffs from the North Carolina and now, Tribal Court litigation against CashCall with regard to the Western Sky loan enterprise.

2.     Plaintiffs Thomas Brown and Monica Johnson filed suit on March 28, 2013 in the Middle District of North Carolina, against Defendants Western Sky Financial, LLC, CashCall, Inc. and others. *Brown, et al. v. Western Sky Financial, LLC, et al.*, No. 1:13-cv-00255-WO-JLW, M.D.N.C. Additional named Plaintiffs were subsequently joined in the case. The Complaint included a putative class action claim.

3.     After amendments to the Complaint, the Defendants moved to dismiss on grounds including Tribal venue, choice of law, an arbitration clause and the doctrine of exhausting Tribal remedies. The District Court issued an Order on January 30, 2015 holding that the matter should be dismissed without prejudice and a new matter filed before the Tribal Court in order to exhaust Tribal remedies.

4.     Accordingly, the Plaintiffs proceeded to file a Complaint in the Tribal Court requesting that it issue a declaratory judgment on the issue of jurisdiction. *Brown, et al. v. CashCall, Inc., et al.*, No. 15C02, Tribal Court of the Cheyenne River Sioux Tribe. That Tribal Court matter remains pending.[2]

---

[1] Supporting Declarations are provided herewith for Thomas Brown, Monica Johnson, Renee Holmes, Kevin Hayes, Leslie Jan Lydon and Elizabeth Jackson. The Declaration of Melinda Long will be forthcoming as a supplemental filing once it is received.

[2] The original M.D.N.C. Complaint pled a putative statewide North Carolina class as well as a national RICO class. The pending Tribal Court matter merely asks the Court to rule on jurisdiction. Given the number of state proceedings against Western Sky and CashCall that are

5.      The Plaintiffs in the *Brown* case are also individuals with an interest represented

by the North Carolina Attorney General who brought an action against CashCall and other

Defendants in North Carolina Superior Court by Complaint filed on December 16, 2013.  *State*

*of North Carolina ex rel. Roy Cooper, Attorney General v. Western Sky Financial, LLC*, No. 13-

CVS-16487, Wake County Superior Court.  The State sought, *inter alia*, injunctive relief to

prohibit Defendants from offering, funding, servicing, or collecting on usurious loans made to

North Carolina borrowers in violation of the Consumer Finance Act, N.C. Gen. Stat. § 53-164, *et*

*seq*., usury statutes, N.C. Gen. Stat. § 24-1, *et seq*., and Unfair and Deceptive Acts and Practices

Act, N.C. Gen. Stat. § 75-1.1, *et seq*., and to obtain restitution and other relief.

6.      On August 27, 2015, the trial court granted the State's motion for a preliminary

injunction against Defendants.  *See* Order dated Aug. 27, 2015, 2015 NCBC 84.[3]

7.      The *Heldt* settlement tries to frame the imposition of a new loan at 18% interest as

a benefit, describing "automatic reduction of the interest rate for class members with eligible

outstanding loans to 18%."  (Doc. 64, p. 2).  But in North Carolina, the borrowers have no

interest rate at all because the usurious loans are illegal, void and unenforceable under the North

Carolina Consumer Finance Act, N.C. Gen. Stat. § 53-164, *et seq*.; the usury statutes, N.C. Gen.

---

now evident, Plaintiffs do not expect to refile the RICO class but only the North Carolina
statewide class, contingent on the outcome of the Tribal Court matter.

[3] In the Order, Gregory P. McGuire, Special Superior Court Judge for Complex Business
Cases rejected Defendants' Tribal law arguments and among other things, barred them from
"[s]oliciting and/or accepting deposits or payments from North Carolina consumers for any loan
product or service;" and from "[c]ollecting upon any further payment, directly or indirectly, from
North Carolina consumers related to any loan product or service."  Order, ¶ 87(ii) and (iii).  In
the order the Court notes:  "[T]he overwhelming evidence before the Court indicates that
consumers signed loans initiated and serviced by Defendants that charge interest rates far above
those permitted under North Carolina law. The State has further produced evidence that
Defendants' loans create significant, unsustainable financial burdens for vulnerable North
Carolina consumers."  Order ¶ 65.

Stat. § 24-2 *et seq*.; the Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1 *et seq*.;

and North Carolina common law. Making usurious loans not only triggers civil liability but is a

criminal in North Carolina. N.C. Gen. Stat. § 53-166(c).

8.      Under the North Carolina statutes, consumer lenders may not recover or retain the

principal amount or interest on an unlawful loan: "the licensee or any other party in violation

shall not collect, receive, or retain any principal or charges whatsoever with respect to the loan."

N.C. Gen. Stat. § 53-166(d). North Carolina law further prohibits "any person who seeks to

avoid [the CFA's] application by any device, subterfuge, or pretense whatsoever." N.C. Gen.

Stat. § 53-166(b). CashCall engaged in such a subterfuge with its "rent-a-tribe" scam.

9.      North Carolina law provisions apply to any lender who solicits in the State, N.C.

Gen. Stat. § 53-190(b), and forbids enforcement of any noncomplying loan made outside the

State. N.C. Gen. Stat. § 53-190(a) ("No loan contract made outside this State in the amount or of

the value of ten thousand dollars ($10,000) or less, for which greater consideration or charges

than are authorized by Gen. Stat. 53-173 and Gen. Stat. 53-176 of this Article have been charged,

contracted for, or received, shall be enforced in this State."). The North Carolina Attorney

General has sent letters to Defendants stating that the Western Sky loans were illegal. See letter

dated Dec. 31, 2012, from NC Attorney General to Western Sly Financial, regarding loan to

Leslie Jan Lydon, attached in the exhibit to Ms. Lydon's Declaration.

10.      N.C. Gen. Stat. § 24-1.1, the usury statute, limits interest rates on small loans to

rates less than what Defendants charged. In addition, N.C. Gen. Stat. § 24-2.1 provides in part:

 (b) Any solicitation or communication to lend, oral or written, originating outside of
this State, but forwarded to and received in this State by a borrower who is a resident
of this State, shall be deemed to be an offer or agreement to lend in this State.

(c) Any solicitation or communication to borrow, oral or written, originating within
this State, from a borrower who is a resident of this State, but forwarded to, and

received by a lender outside of this State, shall be deemed to be an acceptance or offer to borrow in this State….

(g) It is the paramount public policy of North Carolina to protect North Carolina resident borrowers through the application of North Carolina interest laws. Any provision of this section which acts to interfere in the attainment of that public policy shall be of no effect.

11.    The North Carolina Plaintiffs would also draw to the Court's attention a comparison of the proposed *Heldt* settlement herein with past Court-approved payday loan settlements involving North Carolina residents.  These settlements include terms and provisions far more beneficial to class members than the proposed settlement in *Heldt:*

a.    *Kucan v. Advance America*, Civ. No. 04-CVS-2860 (New Hanover County Superior Court) (class action against payday lender) -- Advance America agreed to a proposed settlement of $18.75 million to benefit North Carolina consumers charged triple-digit interest rates and unlawful fees.  The settlement agreement dated September 2010 included provisions to ensure that Defendants would not engage in any collection efforts or claims against class members, would not assert that any settlement payment was forgiveness of indebtedness, and there would be under no circumstances any reverter of residual funds to Defendants.  The Defendants were obligated to send detailed class member information both to the settlement administrator and to class counsel to ensure accountability and transparency and better enable class members to be located.  The settlement administrator and class counsel worked together to update addresses and send two rounds of checks, obtaining a very high success rate in getting funds to victims.  The class notice was not only mailed but also published and a special website was set up.  There was no requirement for class members to make claims in order to receive their settlement.

b.    *McQuillan v. Check n Go*, Civ. No. 04-CVS-2858 (New Hanover County Superior Court) (same) – This case settled for $14 million and was finalized and administered under terms and conditions similar to *Kucan*.

c.    *Hager v. Check into Cash*, Civ. No. 04-CVS-2859 (New Hanover County Superior Court) – This case settled for $12 million and was finalized and administered under terms and conditions similar to *Kucan*.

d.    Because of the carefully designed settlement provisions in these cases, in the end, settlement checks were cashed by more than 200,000 class members in the cases.  The proposed settlement in the *Heldt* case lacks the limits and protections found in these payday lending settlements.

12.     The North Carolina Plaintiffs have further concerns and objections to the proposed settlement, but are constrained by the short period of time they have had since learning of the proposed settlement and the imminence of the upcoming hearing date this Friday, November 20.  They join in the request to postpone the hearing on any preliminary approval motion so as to allow interested parties and stakeholders a fair opportunity to evaluate the proposed settlement and the numerous issues that it raises.

Respectfully submitted, this the 18th day of November, 2015.

s/John Hughes
Mona L. Wallace (N.C. Bar No. 09021)
John S. Hughes (N.C. Bar No. 22126)
WALLACE & GRAHAM, P.A.
525 N. Main St.
Salisbury, NC 28144
704-633-5244 Telephone
mwallace@wallacegraham.com
jhughes@wallacegraham.com

*Attorneys for Plaintiffs*

# DECLARATION OF THOMAS BROWN

I, Thomas Brown, pursuant to 28 U.S.C. § 1746 hereby declare under

penalty of perjury the following is true and correct:

1.      My name is Thomas Brown. I am over twenty-one years of age and

am fully competent to make the statements contained herein.

2.      I am a citizen and resident of Kernersville, Forsyth County, North

Carolina. I am one of the Plaintiffs in the case of *Brown v. CashCall* that was

brought in North Carolina Federal Court and is now in the Tribal Court.

3.      I am a United States Army veteran. I was injured while in service and

I am now disabled. I live on a fixed income that I receive because of my disability.

4.      In June-July, 2012, I was in economic duress and hardship. I saw a

TV ad for Western Sky loans. On or about July 5, 2012, I was loaned $2,600.

(See Exhibit).

5.      The company kept $75 of that amount as a "Prepaid Finance

Charge/Origination Fee," so that the amount actually sent to me was $2,525.

6.      In return, I was to make 48 monthly payments at what I have since

learned to be a nominal APR of 139% / effective APR of 273%, resulting in total

payments of $14,102.87, more than five times the amount borrowed.

7.      I told the company when I first spoke with them that I only wanted to

borrow about $1,500. Nevertheless, they sent $2,525. When I complained that

1

this was more than I wanted, they told me to send back $1,000. I did so. But I never received any statement acknowledging the repayment or modifying my repayment schedule. Also I was never sent a new contract reflecting the new agreed-upon terms for a loan of $1,500.

8.  Attempting to pay the loan hurt my ability to manage my personal finances. I had to forego necessities such as healthy food and home utilities in order to try to make payments.

9.  I wanted to pay off the entire loan after one month, but I was unable to do so and for a significant length of time I was trapped into making payments of nearly $300 per month that I frankly could not afford on my fixed income.

10.  My military disability income was direct-deposited into my bank account. On one or more occasions, the company automatically debited loan payments from my bank account.

11.  I brought the North Carolina lawsuit to try to obtain justice for myself and other loan victims. I believe the loans are illegal and they are usury.

12.  My lawyers sued for me in North Carolina Federal Court and more recently in the Tribal Court. I am told that the North Carolina Attorney General is also taking legal action. I have been advised that our State Attorney General has told Western Sky that the loans are unlawful under North Carolina law.

13.     I have been told that now, the company is trying to make a settlement in South Dakota.  But, none of the Plaintiffs in that South Dakota case live in North Carolina.  I do not believe they can represent me or other loan victims in North Carolina when they did not live here and did not get the loans here.

14.     Also, I am told the proposed settlement would not declare that all of the Western Sky loans are illegal and void and unenforceable.  I believe they plainly are at least in my State.  I oppose a settlement that would keep the loans somehow legal.

15.     I am also told that in the proposed settlement, a borrower had to pay back the full loan plus over 18% interest to receive even a part of a refund.  I do not believe this is adequate to pay back the victims a decent settlement.

16.     CashCall was a company that used a deceptive scheme to make loans at interest rates so high they broke the law of criminal usury statutes.  Now that they have been caught, they just want to reduce their interest rate to 18% and still get paid on the loans.  This is not how the law works, at least in North Carolina.

17.     I am also told that the proposed settlement would make victims write in and fill out a claim form to have a chance to get any payment.  But the company should already know their loan information.  They should not have to jump through hoops to receive a settlement.

18.     I believe the proposed settlement should not include anyone in North

Carolina.  North Carolina victims should be represented by North Carolina

Plaintiffs and should be entitled to a better settlement and for the loans to be void.

I ask for permission to intervene in the South Dakota case so I can protect my

rights and those of other North Carolina residents.

I declare under penalty of perjury that the foregoing is true and correct to the

best of my knowledge.

**EXECUTED** this __17th__ day of November, 2015 in Kernersville, North Carolina.


Signed: _Thomas Brown_
                Thomas Brown

**Thomas Brown Western Sky loan agreement & Affidavit.**

Add. 11



**QUESTIONS? Call Us at 1-866-SKY-1224**

Home | Logout | Loan Status | Upload Documents | Change Password | Rates | Contact Us

**Loan Document**

### WESTERN SKY CONSUMER LOAN AGREEMENT

| | | | |
|---|---|---|---|
| Loan No.: | 13881249 | Date of Note: | July 05, 2012 |
| | | Expected Funding Date: | July 05, 2012 |
| Lender: | Western Sky Financial, LLC | Borrower: | THOMAS W BROWN JR |
| Address: | P.O. Box 370 Timber Lake, SD 57656 | Address: | 674 SUN MEADOWS DR KERNERSVILLE, NC 27284 |

**This Loan Agreement is subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River Indian Reservation.** By executing this Loan Agreement, you, the borrower, hereby acknowledge and consent to be bound to the terms of this Loan Agreement, consent to the sole subject matter and personal jurisdiction of the Cheyenne River Sioux Tribal Court, and that no other state or federal law or regulation shall apply to this Loan Agreement, its enforcement or interpretation.

You further agree that you have executed the Loan Agreement as if you were physically present within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation, and that this Loan Agreement is fully performed within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation.

In this Loan Agreement, the words "you" and "your" mean the person signing as a borrower. "We," "us," "our," and "Lender" mean Western Sky Financial, LLC, a lender authorized by the laws of the Cheyenne River Sioux Tribal Nation and the Indian Commerce Clause of the Constitution of the United States of America, and any subsequent holder of this Note ("Western Sky").

TRUTH IN LENDING DISCLOSURES: The disclosures below are provided to you so that you may compare the cost of this loan to other loan products you might obtain in the United States. Our inclusion of these disclosures does not mean that we consent to application of state or federal law to us, to the loan, or this Loan Agreement.

### TRUTH IN LENDING ACT DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you | The amount you will have paid after all payments are made as scheduled |
| 139.12 % | $11,577.87 | $2,525.00 | $14,102.87 |

| PAYMENT SCHEDULE |
|---|
| One payment of $263.25 on August 01, 2012. |
| 47 monthly payments of $294.46 beginning on September 01, 2012. |

**Late Charge:**   If a payment is more than 15 days late, you will be charged $29.00.

**Prepayment:**   If you pay off this loan early, you will not have to pay any penalty.

Add. 12

Please see the remainder of this document for additional information about nonpayment, default and any required repayment in full before the scheduled date.

## ITEMIZATION OF AMOUNT FINANCED

| | |
|---|---|
| Amount Financed: | $2,525.00 |
| Amount Paid to Borrower Directly: | $2,525.00 |
| Prepaid Finance Charge/Origination Fee: | $75.00 |

You promise to pay to the order of Western Sky or any subsequent holder of this Note the sum of **$2,600.00**, together with interest calculated at **135.00 %** per annum and any outstanding charges or late fees, until the full amount of this Note is paid. You promise to repay this loan by making, at a minimum, the payments described on the payment schedule listed above.

Payments will be applied first to any outstanding charges or late fees, then to earned interest and finally to principal. The payment schedule described above may change in the event you do not make all payments as scheduled or in the event you accrue any fees.

Interest is calculated on a 360/360 simple interest basis. This means that interest is calculated by dividing the annual interest Rate by 360, multiplying that number by the outstanding principal balance, and multiplying that number by the number of days the principal balance is outstanding, assuming that each full month is comprised of 30 days.

You may prepay all or any part of the principal without penalty.

If you fail to make any payment due hereunder, the holder of this Note shall have the right, after a 30-day grace period, to declare this note to be immediately due and payable. If you file for an assignment for the benefit of creditors, or for bankruptcy, the holder of this Note shall have the right to declare this Note to be immediately due and payable.

Except as may be provided in the "Arbitration" section of this Note, if we are required to employ an attorney at law to collect any amounts due hereunder, you will be required to pay the reasonable fees of such attorney to protect our interest or to take any other action required to collect the amounts due hereunder

The Prepaid Finance Charge disclosed above is fully earned upon loan origination and is not subject to rebate upon prepayment or acceleration of this Note.

**LATE FEES.** You will be subject to a late fee of $29.00 if you fail to make your payment within 15 days of the due date. We can collect any late fees immediately via Electronic Funds Transfer (EFT) from your bank account.

**INSUFFICIENT FUNDS.** You will be subject to a fee of $29.00 if any payment you make is returned by your bank for insufficient funds.

**E-SIGN/ELECTRONIC COMMUNICATIONS.** Although federal law does not apply to this Agreement, this Note is in original format an electronic document fully compliant with the Electronic Signatures in Global and National Commerce Act (E-SIGN) and other applicable laws and regulations, and the one, true original Note is retained electronically by us. All other versions hereof, whether electronic or in tangible format, constitute facsimiles or reproductions only. You understand that you have previously consented to receive all communications from us, including but not limited to all required disclosures, electronically.

**CREDIT REPORTS.** You agree that we may obtain credit reports on you on an ongoing basis as long as this loan remains in effect. You also authorize us to report information concerning this account to credit bureaus and anyone else we believe in good faith has a legitimate need for such information. Late payments, missed payments, or other defaults on this account may be reflected in your credit report.

**CALL MONITORING/RECORDING.** You understand that, from time to time, we may monitor or record telephone calls between us for quality assurance purposes. You expressly consent to have your calls monitored or recorded.

**TELEPHONE CALLS.** You hereby agree that in the event we need to contact you to discuss your account or the repayment of your loan, we may telephone you at any number, including any cell phone number provided, and that we may leave an autodialed or prerecorded message or use other technology to make that contact or to communicate to you the status of your account.

**VERIFICATION.** You authorize us to verify all of the information you have provided in obtaining approval of this

Loan.

**GOVERNING LAW.** This Agreement is governed by the Indian Commerce Clause of the Constitution of the United States of America and the laws of the Cheyenne River Sioux Tribe. We do not have a presence in South Dakota or any other states of the United States. Neither this Agreement nor Lender is subject to the laws of any state of the United States of America. By executing this Agreement, you hereby expressly agree that this Agreement is executed and performed solely within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation. You also expressly agree that this Agreement shall be subject to and construed in accordance only with the provisions of the laws of the Cheyenne River Sioux Tribe, and that no United States state or federal law applies to this Agreement. You agree that by entering into this Agreement you are voluntarily availing yourself of the laws of the Cheyenne River Sioux Tribe, a sovereign Native American Tribal Nation, and that your execution of this Agreement is made as if you were physically present within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation.

**ASSIGNMENT.** We may assign or transfer this Loan Agreement or any of our rights under it at any time to any party.

### WAIVER OF JURY TRIAL AND ARBITRATION.

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.** Unless you exercise your right to opt-out of arbitration in the manner described below, any dispute you have with Western Sky or anyone else under this loan agreement will be resolved by binding arbitration. Arbitration replaces the right to go to court, including the right to have a jury, to engage in discovery (except as may be provided in the arbitration rules), and to participate in a class action or similar proceeding. In Arbitration, a dispute is resolved by an arbitrator instead of a judge or jury. Arbitration procedures are simpler and more limited than court procedures. Any Arbitration will be limited to the dispute between yourself and the holder of the Note and will not be part of a class wide or consolidated Arbitration proceeding.

**Agreement to Arbitrate.** You agree that any Dispute, except as provided below, will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement.

**Arbitration Defined.** Arbitration is a means of having an independent third party resolve a Dispute. A "Dispute" is any controversy or claim between you and Western Sky or the holder or servicer of the Note. The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future, including events that occurred prior to the opening of this Account), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e. money, injunctive relief, or declaratory relief). A Dispute includes, by way of example and without limitation, any claim based upon marketing or solicitations to obtain the loan and the handling or servicing of my account whether such Dispute is based on a tribal, federal or state constitution, statute, ordinance, regulation, or common law, and including any issue concerning the validity, enforceability, or scope of this loan or the Arbitration agreement. For purposes of this Arbitration agreement, the term "the holder" shall include Western Sky or the then current note holder's employees, officers, directors, attorneys, affiliated companies, predecessors, and assigns, as well as any marketing, servicing, and collection representatives and agents.

**Choice of Arbitrator.** Any party to a dispute, including a Holder or its related third parties, may send the other party written notice by certified mail return receipt requested at the address appearing at the top of this Agreement of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, you shall have the right to select any of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7879) http://www.adr.org; JAMS (1-800-352-5267) http://www.jamsadr.com; or an arbitration organization agreed upon by you and the other parties to the Dispute. The arbitration will be governed by the chosen arbitration organization's rules and procedures applicable to consumer disputes, to the extent that those rules and procedures do not contradict either the law of the Cheyenne River Sioux Tribe or the express terms of this Agreement to Arbitrate, including the limitations on the Arbitrator below. The party receiving notice of Arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. You understand that if you demand Arbitration, you must inform us of your demand and of the arbitration organization you have selected. You also understand that if you fail to notify us, then we have the right to select the arbitration organization. Any arbitration under this Agreement may be conducted either on tribal land or within thirty miles of your residence, at your choice, provided that this accommodation for you shall not be construed in any way (a) as a relinquishment or waiver of the Cheyenne River Sioux Tribe's sovereign status or immunity, or (b) to allow for the application of any law other than the law of the Cheyenne River Sioux Tribe of Indians to this Agreement.

**Cost of Arbitration.** We will pay the filing fee and any costs or fees charged by the arbitrator regardless of which party initiates the Arbitration. Except where otherwise provided by the law of the Cheyenne River Sioux Tribal Nation, each party will be responsible for its own attorneys' fees and other expenses. Unless prohibited by law, the arbitrator may award fees, costs, and reasonable attorneys' fees to the party who substantially prevails in the Arbitration.

**Waiver of Rights.** YOU HEREBY AGREE THAT YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL, TO HAVE A

COURT DECIDE YOUR DISPUTE, TO PARTICIPATE IN A CLASS ACTION LAWSUIT, AND TO CERTAIN DISCOVERY AND OTHER PROCEDURES THAT ARE AVAILABLE IN A LAWSUIT. The arbitrator has the ability to award all remedies available by statute, at law, or in equity to the prevailing party, except that the parties agree that the arbitrator has no authority to conduct class wide proceedings and will be restricted to resolving the individual disputes between the parties. The validity, effect, and enforceability of this waiver of class action lawsuit and class wide Arbitration is to be determined solely by a court of competent jurisdiction located within the Cheyenne Rivers Sioux Tribal Nation, and not by the arbitrator. If the court refuses to enforce the class wide Arbitration waiver, or if the arbitrator fails or refuses to enforce the waiver of class wide Arbitration, the parties agree that the Dispute will proceed in tribal court and will be decided by a tribal court judge, sitting without a jury, under applicable court rules and procedures.

**Applicable Law and Judicial Review.** THIS ARBITRATION PROVISION IS MADE PURSUANT TO A TRANSACTION INVOLVING THE INDIAN COMMERCE CLAUSE OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA, AND SHALL BE GOVERNED BY THE LAW OF THE CHEYENNE RIVER SIOUX TRIBE. The arbitrator will apply the laws of the Cheyenne River Sioux Tribal Nation and the terms of this Agreement. The arbitrator must apply the terms of this Arbitration agreement, including without limitation the waiver of class wide Arbitration. The arbitrator will make written findings and the arbitrator's award may be filed in the Cheyenne River Sioux Tribal Court, which has jurisdiction in this matter. The Arbitration award will be supported by substantial evidence and must be consistent with this Agreement and applicable law or may be set aside by a court upon judicial review.

**Small Claims Exception.** All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal in the Cheyenne River Sioux Tribal Small Claims Court for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration.

**Other Provisions.** This Arbitration provision will survive: (i) termination or changes in this Agreement, the Account, or the relationship between us concerning the Account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of my Note, or any amounts owed on my account, to any other person or entity. This Arbitration provision benefits and is binding upon you, your respective heirs, successors and assigns. It also benefits and is binding upon us, our successors and assigns, and related third parties. The Arbitration Provision continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy. The Arbitration Provision survives any termination, amendment, expiration, or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing. If any of this Arbitration Provision is held invalid, the remainder shall remain in effect.

**Right to Opt Out.** If you do not wish your account to be subject to this Arbitration Agreement, you must advise us in writing at P.O. Box 370, Timber Lake, South Dakota, 57656, or via e-mail at info@westernsky.com. You must clearly print or type your name and account number and state that you reject Arbitration. You must give written notice; it is not sufficient to telephone us. We must receive your letter or e mail within sixty (60) days after the date your loan funds or your rejection of Arbitration will not be effective. In the event you opt out of Arbitration, any disputes hereunder shall nonetheless be governed under the laws of the Cheyenne River Sioux Tribal Nation.

**Payments.** You have previously authorized and requested us to initiate an automated clearinghouse or other electronic funds transfer ("EFT") from the bank account identified on your Application (the "Bank Account") to make each payment required hereunder on the day it is due. You also authorize us to initiate an EFT to or from the Bank Account to correct any erroneous payment and, in the event any EFT is unsuccessful, to attempt such payment up to two additional times. You understand that unsuccessful EFTs may result in charges by your bank, and you agree that we are not liable for such charges. We will notify you 10 days prior to any given transfer if the amount to be transferred varies by more than $50 from your regular payment amount. You also authorize us to withdraw funds from your account on additional days throughout the month in the event you are delinquent on your loan payments. Your request and authorization for us to initiate EFTs is entirely voluntary, and you may terminate this authorization by notifying us in writing via fax (866-347-0666) or email (customer.service@westernsky.com) soon enough to allow us a reasonable opportunity to act on your termination (generally at least three business days in advance).

**THIS LOAN CARRIES A VERY HIGH INTEREST RATE. YOU MAY BE ABLE TO OBTAIN CREDIT UNDER MORE FAVORABLE TERMS ELSEWHERE. EVEN THOUGH THE TERM OF THE LOAN IS 48 MONTHS, WE STRONGLY ENCOURAGE YOU TO PAY OFF THE LOAN AS SOON AS POSSIBLE. YOU HAVE THE RIGHT TO PAY OFF ALL OR ANY PORTION OF THE LOAN AT ANY TIME WITHOUT INCURRING ANY PENALTY. YOU WILL, HOWEVER, BE REQUIRED TO PAY ANY AND ALL INTEREST THAT HAS ACCRUED FROM THE FUNDING DATE UNTIL THE PAYOFF DATE.**

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS AGREEMENT BEFORE YOU SIGN IT. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT.

| ✓ | YOU HAVE READ AND UNDERSTAND THE ARBITRATION SECTION OF THIS NOTE AND AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THAT SECTION. |
|---|---|

> YOU HAVE READ ALL OF THE TERMS AND CONDITIONS OF THIS PROMISSORY NOTE AND DISCLOSURE STATEMENT AND AGREE TO BE BOUND THERETO. YOU UNDERSTAND AND AGREE THAT YOUR EXECUTION OF THIS NOTE SHALL HAVE THE SAME LEGAL FORCE AND EFFECT AS A PAPER CONTRACT.

**CONSUMER COMPLAINTS** If you have a complaint about our loan, please let us know. You can contact us at P.O. Box 370, Timber Lake, South Dakota, 57656, telephone (877) 860 2274.

Click here to print out a copy of this document for your records.

**WESTERN SKY FINANCIAL is owned wholly by an individual Tribal Member of the Cheyenne River Sioux Tribe and is not owned or operated by the Cheyenne River Sioux Tribe or any of its political subdivisions. WESTERN SKY FINANCIAL is a Native American business operating within the exterior boundaries of the Cheyenne River Sioux Reservation, a sovereign nation located within the United States of America.**

2012 Western Sky Financial, LLC. All Rights Reserved. P.O.Box 370, Timber Lake, SD, 57656 (605)865-3311

Western Sky Privacy Policy , Terms Of Use, Responsible Lending

Powered by Cogility Software

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NUMBER 1:13-CV-00255-WO-JLW**

| | |
|---|---|
| THOMAS BROWN, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| WESTERN SKY FINANCIAL, LLC, | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

## AFFIDAVIT OF THOMAS BROWN

Thomas Brown, first duly sworn, does depose and say:

1.    My name is Thomas Brown. I am over the age of eighteen (18). I have personal knowledge of the facts stated herein, and am fully competent to make the statements set forth below.

2.    I am a named Plaintiff in this action.

3.    In June/July of 2012, I needed money for car repairs. I have a fixed income because I am disabled. I receive limited income from Social Security disability and the military. My wife, Frankie Brown, has a limited income as well; she works at Wells Fargo. I saw an ad on TV for Western Sky and I pulled up their website on my home computer. We live in Kernersville.

4.    I called the 800 number and spoke to a man who was a representative for Western Sky. He said they needed a bank statement, proof of income, voided check and driver's license. I faxed them this information. During the phone call, he mentioned arbitration but did not advise me that arbitration was the only way I could proceed if there was a dispute. He also did not advise me of where an arbitration would be. He did not mention that I could not participate in a class action.

5.    I never physically signed an actual contract, rather, I clicked on buttons on the website and there was an electronic form I could print.

6.    I told the man that I did not want a loan for the $2,525 amount on the contract but he just said I could send back what I didn't need. The company electronically sent the money to my bank account (PNC Bank), but when they took back the $1000 that I did not want, they charged a fee for that which I recollect as being for around $15 to $20.

7.    I paid monthly payments of $294.46/month for about 3 months. I stopped paying when I spoke to the law firm and had an understanding that the loan was illegal.

8.     The afternoon of the very same day that I talked to the man at Western Sky, I got a call from a woman who said she was with a company called CashCall.  She said how I had just gotten a loan with Western Sky and CashCall would be the company shown on my bank statements because they were collecting on the loan because Western Sky transferred the loan to them.  My recollection is the actual loan money came into my bank account the next day.

9.     After I stopped making payments, I got a call from a man who said he was calling because I was late on my payments.  He said he was with CashCall.  I told him he needed to talk to my lawyer and gave him the law firm's number.

10.     I have never been to South Dakota and have never been on any Indian reservation in South Dakota.

Thomas Brown

SWORN to and subscribed before me
this the 20th day of June, 2013.

_____ (SEAL)
NOTARY PUBLIC
My Commission Expires: 8/26/2017.

Teresa E. Faggart
NOTARY PUBLIC
Rowan County, NC

2

## DECLARATION OF KEVIN HAYES

I, Kevin Hayes, pursuant to 28 U.S.C. § 1746 hereby declare under penalty of perjury the following is true and correct:

1.     My name is Kevin Hayes. I am over twenty-one years of age and am fully competent to make the statements contained herein.

2.     I am a citizen and resident of High Point, Guilford County, North Carolina.

3.     I am one of the Plaintiffs in the case of *Brown v. CashCall* that was brought in North Carolina Federal Court and is now in the Tribal Court.

4.     As of October 2010, I had medical bills that were behind and I was in a situation of financial hardship with two sons to support.   I saw a Western Sky ad on TV and gave them a call.

5.     I received a loan in the amount of $2,525 on or about October 25, 2010. (See Exhibit attached).   Within just days, then I got a notice on October 28, 2010 stating the loan had been "sold to WS Funding, LLC" and would be "serviced" by CashCall.

6.     In the end I paid back about $2,690 on this loan.  These payments were made over the approximate time period of November 2010 through August 2011 and there were multiple ACH debits during that time.

1

7.    I complained to the North Carolina Attorney General on or about

September 6, 2011.  The Attorney General wrote CashCall on or about September

7, 2011.  Then, CashCall wrote back on September 13, 2011 stating it was "the

Assignee of this loan with Western Sky" and insisted the loan was valid.

8.    The Bogue law firm in South Dakota wrote on October 19, 2011 to

the Attorney General on behalf of Western Sky, stating that the loan "has been

assigned to WS Funding, LLC."

9.    The companies reported the debt to credit reporting agencies, leading

to it appearing as a derogatory or negative item on my credit report.

10.    Attempting to pay the loan hurt my ability to manage my personal

finances.  The company knows people who get these loans have limited incomes

and will rarely be able to pay it all back at once.  I felt trapped in the loan

payments.

11.    I am part of the North Carolina lawsuit to try to obtain justice for

myself and other loan victims.  I believe the loans are illegal and they are usury.

12.    My lawyers sued for me in North Carolina Federal Court and more

recently in the Tribal Court.  I am told that the North Carolina Attorney General is

also taking legal action.

13.    I have been told that now, the company is trying to make a settlement

in South Dakota.  But, none of the Plaintiffs in that South Dakota case live in

North Carolina. I do not believe they can represent me or other loan victims in North Carolina when they did not live here and did not get the loans here.

14. Also, I am told the proposed settlement would not declare that all of the Western Sky loans are illegal and void and unenforceable. I believe they plainly are. I oppose a settlement that would keep the loans somehow legal.

15. I am also told that in the proposed settlement, a borrower had to pay back the full loan plus over 18% interest to receive even a part of a refund. I do not believe this is adequate to pay back the victims a decent settlement.

16. CashCall was a company that used a deceptive scheme to make loans at interest rates so high they broke the law of criminal usury statutes. Now that they have been caught, they want to reduce their interest rate to 18% and still get paid on the loans. This is not how the law works in North Carolina.

17. I am also told that the proposed settlement would make victims write in and fill out a claim form to have a chance to get any payment. But the company should already know their loan information. They should not have to jump through hoops to receive a settlement.

18. I believe the proposed settlement should not include anyone in North Carolina. North Carolina victims should be represented by North Carolina Plaintiffs and should be entitled to a better settlement and for the loans to be void.

3

I ask for permission to intervene in the South Dakota case so I can protect my rights and those of other North Carolina residents.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

**EXECUTED** this _17th_ day of November, 2015 in High Point, North Carolina.

Signed: _____.
Kevin Hayes

**Kevin Hayes materials (Western Sky loan agreement, Notice of assignment, Hayes complaint to Attorney General, Attorney General letter to Western Sky, CashCall letter to Attorney General, Bogue letter to Attorney General).**

# WESTERN SKY CONSUMER LOAN AGREEMENT

| Loan No.: | ████████ | Date of Note: | October 25, 2010 |
|---|---|---|---|
| | | Expected Funding Date: | October 25, 2010 |
| Lender: | Western Sky Funding, LLC | Borrower: | KEVIN C HAYES |
| Address: | P.O. Box 370<br>Timber Lake, SD 57656 | Address: | 3567 RAMSAY ST<br>HIGH POINT, NC 27265 |

**This Loan Agreement is subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River Indian Reservation.** By executing this Loan Agreement, you, the borrower, hereby acknowledge and consent to be bound to the terms of this Loan Agreement, consent to the sole subject matter and personal jurisdiction of the Cheyenne River Sioux Tribal Court, and further agree that no other state or federal law or regulation shall apply to this Loan Agreement, its enforcement or interpretation.

In this Loan Agreement, the words "you" and "your" mean the person signing as a borrower. "We," "us," "our," and "Lender" mean Western Sky Funding, LLC, a lender authorized by the laws of the Cheyenne River Sioux Tribal Nation and the Indian Commerce Clause of the Constitution of the United States of America, and any subsequent holder of this Note ("Western Sky").

TRUTH IN LENDING DISCLOSURES: The disclosures below are provided to you so that you may compare the cost of this loan to other loan products you might obtain in the United States. Our inclusion of these disclosures does not mean that we consent to application of state or federal law to us, to the loan, or this Loan Agreement.

## TRUTH IN LENDING ACT DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you | The amount you will have paid after all payments are made as scheduled |
| **139.34 %** | **$8,304.82** | **$2,525.00** | **$10,829.82** |

| PAYMENT SCHEDULE |
|---|
| One payment of $68.25 on November 01, 2010. |
| 35 monthly payments of $298.94 beginning on December 01, 2010. |
| One payment of $298.67 on November 01, 2013. |

**Late Charge:** If a payment is more than 15 days late, you will be charged $29.00.

**Prepayment:** If you pay off this loan early, you will not have to pay any penalty.

Please see the remainder of this document for additional information about nonpayment, default and any required repayment in full before the scheduled date.

### ITEMIZATION OF AMOUNT FINANCED

| | |
|---|---|
| Amount Financed: | $2,525.00 |
| Amount Paid to Borrower Directly: | $2,525.00 |
| Prepaid Finance Charge/Origination Fee: | $75.00 |

You promise to pay to the order of Western Sky or any subsequent holder of this Note the sum of **$2,600.00**, together with interest calculated at **135.00 %** per annum and any outstanding charges or late fees,
until the full amount of this Note is paid. You promise to repay this loan by making, at a minimum, the payments described on the payment schedule listed above.

Payments will be applied first to any outstanding charges or late fees, then to earned interest and finally to principal. The payment schedule described above may change in the event you do not make all
payments as scheduled or in the event you accrue any fees.

Interest is calculated on a 360/360 simple interest basis. This means that interest is calculated by dividing the annual Interest Rate by 360, multiplying that number by the outstanding principal balance,
and multiplying that number by the number of days the principal balance is outstanding.

You may prepay all or any part of the principal without penalty.

If you fail to make any payment due hereunder, the holder of this Note shall have the right, after a 30-day grace period, to declare this note to be immediately due and payable. If you file for an assignment
for the benefit of creditors, or for bankruptcy, the holder of this Note shall have the right to declare this Note to be immediately due and payable.

Except as may be provided in the "Arbitration" section of this Note, if we are required to employ an attorney at law to collect any amounts due hereunder, you will be required to pay the reasonable fees of
such attorney to protect our interest or to take any other action required to collect the amounts due hereunder.

The Prepaid Finance Charge disclosed above is fully earned upon loan origination and is not subject to rebate upon prepayment or acceleration of this Note.

**LATE FEES.** You will be subject to a late fee of $29 if you fail to make your payment within 15 days of the
due date. We can collect any late fees immediately via Electronic Funds Transfer (EFT) from your bank account.

**INSUFFICIENT FUNDS.** You will be subject to a fee of $29 if any payment you make is returned by your bank for
insufficient funds.

**E-SIGN/ELECTRONIC COMMUNICATIONS.** Although federal law does not apply to this Agreement, this Note is in original format an
electronic document fully compliant with the Electronic Signatures in Global and National Commerce Act (E-SIGN) and other applicable laws and regulations, and the one, true original Note is retained
electronically by us. All other versions hereof, whether electronic or in tangible format, constitute facsimiles or reproductions only. You understand that you have previously consented to receive all communications from us, including but not limited to all required disclosures, electronically.

**CREDIT REPORTS.** You agree that we may obtain credit reports on you on an ongoing basis as long as this loan remains in
effect. You also authorize us to report information concerning this account to credit bureaus and anyone else we believe in good faith has a legitimate need for such information. Late payments, missed
payments, or other defaults on this account may be reflected in your credit report.

**CALL MONITORING/RECORDING.** You understand that, from time to time, we may monitor or record telephone calls between us for
quality assurance purposes. You expressly consent to have your calls monitored or recorded.

**TELEPHONE CALLS.** You hereby agree that in the event we need to contact you to discuss your account or the repayment of your
loan, we may telephone you at any number, including any cell phone number provided, and that we may leave an autodialed or prerecorded message or use other technology to make that contact or to communicate
to you the status of your account.

**VERIFICATION.** You authorize us to verify all of the information you have provided in obtaining approval of this Loan.

**GOVERNING LAW.** This Agreement is governed by the Indian Commerce Clause of the Constitution of the United States of America
and the laws of the Cheyenne River Sioux Tribe. We do not have a presence in South Dakota or any other states of the United States. Neither this Agreement nor Lender is subject to the laws of any state of
the United States of America.

**ASSIGNMENT.** We may assign or transfer this Loan Agreement or any of our rights under it at any time to any party.

**WAIVER OF JURY TRIAL AND ARBITRATION.**

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.** Unless you exercise your right to opt-out of arbitration in the
manner described below, any dispute you have with Western Sky or anyone else under this loan agreement will be resolved by binding arbitration. Arbitration replaces the right to go to court, including the
right to have a jury, to engage in discovery (except as may be provided in the arbitration rules), and to participate in a class action or similar proceeding. In Arbitration, a dispute is resolved by an arbitrator instead of a judge or jury. Arbitration procedures are simpler and more limited than court procedures. Any Arbitration will be limited to the dispute between yourself and the holder of the

Note
and will not be part of a class-wide or consolidated Arbitration proceeding.

**Agreement to Arbitrate.** You agree that any Dispute, except as provided below, will be resolved by Arbitration, which shall
be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement.

**Arbitration Defined.** Arbitration is a means of having an independent third party resolve a Dispute. A "Dispute" is any
controversy or claim between you and Western Sky or the holder of the Note. The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether
past, present, or future, including events that occurred prior to the opening of this Account), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e. money, injunctive relief, or declaratory relief). A Dispute includes, by way of example and without limitation, any claim based upon marketing or solicitations to obtain the loan and the handling or servicing of my account whether such Dispute is based on a tribal, federal or state constitution, statute, ordinance, regulation, or common law, and including any issue concerning the validity,
enforceability, or scope of this loan or the Arbitration agreement. For purposes of this Arbitration agreement, the term "the holder" shall include Western Sky or the then-current note holder's employees,
officers, directors, attorneys, affiliated companies, predecessors, and assigns, as well as any marketing, servicing, and collection representatives and agents.

**Choice of Arbitrator.** Any party to a dispute, including related third parties, may send the other party written notice by
certified mail return receipt requested at the address appearing at the top of this Loan Agreement of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested,
even if a lawsuit has been filed. Arbitration shall be conducted in the Cheyenne River Sioux Tribal Nation by your choice of either (i) a Tribal Elder, or (ii) a panel of three (3) members of the Tribal Council, and shall be conducted in accordance with the Cheyenne River Sioux Tribal Nation's consumer dispute rules and the terms of this Agreement. You may appear at Arbitration via telephone or video
conference, and you will not be required to travel to the Cheyenne River Sioux Tribal Nation. The party receiving notice of Arbitration will respond in writing by certified mail return receipt requested

within twenty (20) days. You understand that if you demand Arbitration, you must inform us of your demand of the Arbitrator you have selected. You also understand that if you fail to notify us, then we have
the right to select the Arbitrator.

**Cost of Arbitration.** We will pay the filing fee and any costs or fees charged by the arbitrator regardless of which party
initiates the Arbitration. Except where otherwise provided by the law of the Cheyenne River Sioux Tribal Nation, each party will be responsible for its own attorneys' fees and other expenses. Unless prohibited by law, the arbitrator may award fees, costs, and reasonable attorneys' fees to the party who substantially prevails in the Arbitration.

**Waiver of Rights.** YOU HEREBY AGREE THAT YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL, TO HAVE A COURT DECIDE YOUR DISPUTE, TO
PARTICIPATE IN A CLASS ACTION LAWSUIT, AND TO CERTAIN DISCOVERY AND OTHER PROCEDURES THAT ARE AVAILABLE IN A LAWSUIT. The arbitrator has the ability to award all remedies available by statute, at law, or in

equity to the prevailing party, except that the parties agree that the arbitrator has no authority to conduct class-wide proceedings and will be restricted to resolving the individual disputes between the parties. The validity, effect, and enforceability of this waiver of class action lawsuit and class-wide Arbitration is to be determined solely by a court of competent jurisdiction located within the Cheyenne Rivers Sioux Tribal Nation, and not by the arbitrator. If the court refuses to enforce the class-wide Arbitration waiver, or if the arbitrator fails or refuses to enforce the waiver of class-wide Arbitration, the parties agree that the Dispute will proceed in tribal court and will be decided by a tribal court judge, sitting without a jury, under applicable court rules and procedures.

**Applicable Law and Judicial Review.** THIS ARBITRATION PROVISION IS MADE PURSUANT TO A TRANSACTION INVOLVING THE INDIAN COMMERCE CLAUSE OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA, AND SHALL BE GOVERNED BY THE LAW OF THE CHEYENNE RIVER SIOUX TRIBE. The arbitrator will apply the laws of the Cheyenne River Sioux Tribal Nation and the terms of this Agreement. The arbitrator must apply the terms of this Arbitration agreement, including without limitation the waiver of class-wide Arbitration. The arbitrator will make written findings and the arbitrator's award may be filed with any court having jurisdiction. The Arbitration award will be supported by substantial evidence and must be consistent with this Agreement and applicable law or may be set aside by a court upon judicial review.

**Other Provisions.** This Arbitration provision will survive: (i) termination or changes in this Agreement, the Account, or the relationship between us concerning the Account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of my Note, or any amounts owed on my account, to any other person or entity. This Arbitration provision benefits and is binding upon you, your respective heirs, successors and assigns. It also benefits and is binding upon us, our successors and assigns, and related third parties. The Arbitration Provision continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy. The Arbitration Provision survives any termination, amendment, expiration, or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing. If any of this Arbitration Provision is held invalid, the remainder shall remain in effect

**Right to Opt Out.** If you do not wish your account to be subject to this Arbitration Agreement, you must advise us in writing at P.O. Box 370, Timber Lake, South Dakota, 57565, or via e-mail at info@westernsky.com. You must clearly print or type your name and account number and state that you reject Arbitration. You must give written notice; it is not sufficient to telephone us. We must receive your letter or e-mail within sixty (60) days after the date your loan funds or your rejection of Arbitration will not be effective. In the event you opt out of Arbitration, any disputes hereunder shall nonetheless be governed under the laws of the Cheyenne River Sioux Tribal Nation.

**THIS LOAN CARRIES A VERY HIGH INTEREST RATE. YOU MAY BE ABLE TO OBTAIN CREDIT UNDER MORE FAVORABLE TERMS ELSEWHERE. EVEN THOUGH THE TERM OF THE LOAN IS 37 MONTHS, WE STRONGLY ENCOURAGE YOU TO PAY OFF THE LOAN AS SOON AS POSSIBLE. YOU HAVE THE RIGHT TO PAY OFF ALL OR ANY PORTION OF THE LOAN AT ANY TIME WITHOUT**

**INCURRING ANY PENALTY. YOU WILL, HOWEVER, BE REQUIRED TO PAY ANY AND ALL INTEREST THAT HAS ACCRUED FROM THE FUNDING DATE UNTIL THE PAYOFF DATE.**

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS AGREEMENT BEFORE YOU SIGN IT. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT.

| | |
|---|---|
| ☑ | YOU HAVE READ AND UNDERSTAND THE ARBITRATION SECTION OF THIS NOTE AND AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THAT SECTION. |
| ☑ | **YOU HAVE READ ALL OF THE TERMS AND CONDITIONS OF THIS PROMISSORY NOTE AND DISCLOSURE STATEMENT AND AGREE TO BE BOUND THERETO. YOU UNDERSTAND AND AGREE THAT YOUR EXECUTION OF THIS NOTE SHALL HAVE THE SAME LEGAL FORCE AND EFFECT AS A PAPER CONTRACT.** |

**CONSUMER COMPLAINTS** - If you have a complaint about our loan, please let us know. You can contact us at P.O. Box 370, Timber

Lake, South Dakota, 57656, telephone (877) 860-2274.

## ELECTRONIC FUNDS AUTHORIZATION AND DISCLOSURE

You hereby authorize us to initiate electronic funds transfers ("EFTs") for withdrawal of your scheduled loan payment from your checking account on or about the FIRST day of each month. You further authorize
us to adjust this withdrawal to reflect any additional fees, charges or credits to your account. We will notify you 10 days prior to any given transfer if the amount to be transferred varies by more than $50
from your regular payment amount. You also authorize us to withdraw funds from your account on additional days throughout the month in the event you are delinquent on your loan payments. You understand that
this authorization and the services undertaken in no way alters or lessens your obligations under the Loan Agreement. You understand that you can cancel this authorization at any time (including prior to
your first payment due date) by sending written notification to us. Cancellations must be received at least three business days prior to the applicable due date. This EFT debit authorization will remain in
full force and effect until the earlier of the following occurs: (i) you satisfy all of your payment obligations under this Loan Agreement or (ii) you cancel this authorization.

In addition, you hereby authorize us and our agents to initiate a wire transfer credit to your bank account to disburse the proceeds of this Loan. You acknowledge that the origination of the wire transfer to
my bank account must comply with applicable provisions of tribal law.

| | |
|---|---|
| ☑ | YOU UNDERSTAND OUR PAYMENT COLLECTION PROCEDURE AND AUTHORIZE ELECTRONIC DEBITS FROM YOUR BANK ACCOUNT. |

Back to top

Message Body (text version)

NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS

This e-mail concerns the personal loan that you recently obtained from Western Sky Financial. Please be advised that your loan has been sold to WS Funding, LLC. This letter is your official notice of the loan sale and the transfer of loan servicing. Effective today, your loan is now owned by WS Funding, LLC and will be serviced by a company called CashCall.

The outstanding principal balance of your debt as of this date is $2,600.00. Unless you dispute the validity of the debt, or any portion thereof, within thirty days after receipt of the notice, CashCall will assume the debt to be valid. If you notify CashCall in writing within the thirty-day period that this debt, or any portion of it, is disputed, CashCall will obtain verification of the debt and will mail it to you. We will also provide you with the address of Western Sky if you so request.

Going forward, CashCall will handle the servicing of your loan, which means collecting your payments and handling related issues. We wish to assure you that the terms and conditions of your Promissory Note and Disclosure Statement will not change in any way, except for the fact that you will now be making all of your payments, including your first payment, to CashCall. As stated in your loan documents, your first payment of $68.25 will be due on November 01, 2010. Western Sky will not accept payments from you beginning 10/28/2010.

CashCall is committed to courteous and responsive service, accurate and timely handling of your payments and simple and direct answers to your questions. For prompt response to all of your inquiries, please remember to reference your account number 4633525.

To ask about this statement or general up-to-the-minute account information, please call 1-877-525-2274. Our hours of operation are 8 a.m. to 9 p.m. Pacific time Monday through Friday; 8 a.m. to 5 p.m. Pacific time Saturday and Sunday. Or write to us at:

General Customer Service Inquiries:
CashCall, Inc.
1600 S Douglass Rd
Anaheim, CA 92806
info@cashcall.com


Payments:
Attn: Payment Processing
CashCall, Inc.
P.O. Box 66007
Anaheim, CA 92816

**Day, Jennifer**

| | |
|---|---|
| From: | consforms@ncdoj.gov |
| Sent: | Tuesday, September 06, 2011 9:37 AM |
| To: | Consumer |
| Subject: | Complaint 17140 Hayes |
| Attachments: | Western Sky Loan Contract.pdf; Kevin Hayes Cease and Desist.doc; Payments made to Western Sky.doc |

# Your Information

| | | | |
|---|---|---|---|
| Prefix | Mr | * First Name | Kevin |
| Middle Initial | C | * Last Name | Hayes |
| * Mailing Address | 3921 Landover Dr. | | |
| * City | High Point | | |
| * State | NC | * Zip Code | 27265 |
| Country, if not US | | | |
| Day Phone Number (including area code) | ▮▮▮▮▮▮▮ | | |
| Evening Phone Number (including area code) | | | |
| Cell Phone Number (including area code) | ▮▮▮▮▮▮▮ | | |
| Fax Number (including area code) | | | |
| County of Residence | Guilford | Email Address | ▮▮▮▮▮▮▮ |

# Information About Company Against Which You Are Complaining

| | |
|---|---|
| * Full name of company | Western Sky Financial, LLC |
| Address | P.O. Box 370 |
| City | Timber Lake |
| State | SD    Zip Code    57656 |
| Country, if not US | |
| Company's internet address (URL) | www.westernsky.com |
| * Telephone number, including area code | 877-860-2274 |
| Fax number, including area code | |

# Complaint Information (complete any blocks which apply to your complaint)

| | |
|---|---|
| Product, item, or service involved | Consumer Loan |
| Date of purchase, service, contract | 10/25/2010 12:00:00 AM |

Manufacturer or
brand

Model

| | |
|---|---|
| Account number | ▉▉▉▉ |

Do not submit credit card or bank account numbers through this form. If you need to provide that information as part of your complaint, please mail it to us instead.

Serial number

| | |
|---|---|
| Did you sign a contract or a lease? | Yes |
| Start Date | 10/25/2010 12:00:00 AM |
| End Date | 9/6/2011 12:00:00 AM |
| Total amount paid | 2690.46 |
| Amount in dispute | 8,304.82 |
| How was payment made: | Debit card |
| Did you buy an extended service contract? | No |

If yes, name of company
responsible for extended service
contract or warranty

# Information About the Transaction

How was initial contact made between you and the
Where did the transaction take place?

I responded to radio/television ad
Via computer (website or e-mail)

# Details of Complaint

* Details

Limit of
2500
characters

I obtained a loan with 139% interest rates last year due to some financial trouble I was in. I have been struggling to maintain the payments and have paid off the prinicipal I borrowed but am now paying the interest. This company westen sky is who I have the contract with, however shortly after obtaining approval for the loan and funding, another company called CashCall contacted me. I recieved information in the mail from CashCall, CashCall appears on my credit reports with all 3 major agencies. However my loan contract is with Western Sky. I did some research and discovered that Western Sky is not licensed to do business in the state of NC and therefore have filed this complaint. I have also sent a certified letter advising the company and their subsidiary CashCall that my loan should be considered paid in full and that the debt was purchased illegally. I feel that they are predatory lendors and have trapped myself and thousands of other consumers who are in sore straits. See attached letter, contract, and payments made to said company. CashCall/ Westen Sky.

2

# Resolution Attempts You Have Made

| | |
|---|---|
| Have you contacted the company with your complaint? | Yes |
| If yes, name of person most recently contacted | Contacted by Mail |
| His/her phone number, incl. area code | |
| Results | |
| * What resolution would you consider fair? | That my loan be considered paid in full, my credit reports reflect paid in full, and no further attempts to collect the interest on this loan. |
| Do you have an attorney in this case? | No |
| If yes, name of your attorney | |
| Attorney's number, incl. area code | |
| Has your complaint been heard or is it scheduled to be heard in court? | No |
| If yes, where and when? | |
| If already heard, what was the result? | |
| Will you be submitting documentation by mail or fax? | No |



# State of North Carolina

**ROY COOPER**
**ATTORNEY GENERAL**

Department of Justice
9001 Mail Service Center
Raleigh, NC 27699-9001

September 7, 2011

**CONSUMER PROTECTION**
Toll Free In NC
**(877) 566-7226**
Outside of NC
**(919) 716-6000**
Fax: (919) 716-6050

Western Sky Financial LLC
P O Box 370
Timber Lake, SD  57656

Re:  File No. 1111464
Kevin C Hayes
3921 Landover Drive
High Point, NC  27265

Dear Sir:

Enclosed is a copy of correspondence received by this office regarding your company.  Please review and respond in writing within fifteen (15) business days after receipt of this letter as to your position on this matter.   In your response refer to File Number 1111464.

Very truly yours,

Jennifer S. Day
Consumer Protection Specialist
CONSUMER PROTECTION DIVISION

Enclosure
cc:    Kevin C Hayes



WWW.CASHCALL.COM

1600 S. DOUGLASS RD.
ANAHEIM, CA 92806-5998
949-752-4600
949-225-4600 (FAX)

September 13, 2011

Jennifer Day
State of North Carolina
Department of Justice
9001 Mail Service Center
Raleigh, NC 27699-9001

SEP 1 5 2011

Re: Complaint of Kevin Hayes File No. 1111464

Dear Ms. Day,

CashCall is in receipt of your letter dated September 7, 2011, which included a consumer complaint submitted by Kevin Hayes against CashCall, Inc and Western Sky Financial. In summary, Mr. Hayes questions the interest rate and the amount of the outstanding balance on his account with CashCall, the Assignee of his loan with Western Sky. He also alleges that CashCall has harassed him in an attempt to collect a debt that has become delinquent. CashCall has investigated this complaint and respond as follows:

Initially, please be advised that as a matter of course CashCall places collection calls to delinquent borrowers. Those telephone conversations are never intended to be anything other than a professional effort to collect a debt that has become delinquent. In reviewing records of the conversations at issue we can confirm that our collectors acted in a professional manner at all times. CashCall follows both state and federal debt collection practices guidelines with respect to debt collections.

Prior to receipt of this complaint, CashCall has no record of receiving a written request to cease calls for Mr. Hayes's account. Nonetheless, on September 13, 2011, upon receipt of this complaint, CashCall ceased ALL calls to Mr. Hayes in accordance with state and federal guidelines, and took steps to ensure all future correspondence would be in writing only.

With regard to Mr. Hayes's loan, according to our records, his loan was funded by Western Sky March 9, 2011 in the amount of $2,600.00, which includes the loan amount of $2,525.00 plus a $75.00 Origination Fee.

Western Sky is a wholly Cheyenne River Sioux Tribal Member owned business and is located and operates exclusively within the exterior boundaries of the Cheyenne River Indian Reservation. The loans are initiated, approved and issued within the confines of the Cheyenne River Indian Reservation. Western Sky does not have any physical presence in North Carolina or any other State of the Union.

In Mr. Hayes's instance, Mr. Hayes contacted Western Sky to obtain an unsecured loan. The loan documents clearly indicate the exclusive underlying jurisdiction of the Cheyenne River Sioux Tribe and the Truth in Lending Act Disclosure Statement, stating the APR as well as the total Finance Charge. In addition, a "welcome call" is made to the debtor, during which the terms of the loan, including interest and repayment schedule, are discussed. At no time did Mr.

Hayes ever indicate that he did not understand the terms of the contract, the jurisdiction of the note, interest rate charged or total finance charge on the loan.

Please be advised that on October 28, 2010, per the NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS e-mail sent to the e-mail address Mr. Hayes provided, his loan was sold to WS Funding, LLC, and is currently being serviced by CashCall.

According to our records, the last payment was made on August 15, 2011 and the account is currently delinquent. The remaining principal balance on the loan is $2,507.83 and the current payoff amount is $2,836.67. Enclosed herein is a detailed payment transaction history for your records.

If Mr. Hayes has any questions regarding the servicing of his account, current balance or payoff amount, or possible assistance options for repaying this debt, we will be more than happy to address them. Mr. Hayes may contact Elissa Chavez directly at 949-752-4630.

In summary, this loan is valid and enforceable, and we have confirmed that Mr. Hayes' account balance is accurate and that we are reporting all credit information correctly for this loan.

Thank you for your attention to this matter. CashCall appreciates the opportunity to respond. If you have any further questions please contact me.

Sincerely,

Elissa Chavez
Director of Fraud Prevention

Enclosures

Cc:  Kevin Hayes 3921 Landover Dr. High Point, NC 27265

# BOGUE ☙ BOGUE, LLP

LAW OFFICES

Cheryl Laurenz-Bogue
Eric H. Bogue

Respond to Faith Office

October 19, 2011

Jennifer S. Day
Consumer Protection Specialist
NC Dept. Of Justice
9001 Mail Service Center
Raleigh, NC 27699-9001

OCT 2 4 2011

RE:   Mr. Kevin C. Hayes, Complainant
      Your File #: 1111464

Dear Ms Day:

I am have been retained by Western Sky of Timber Lake, South Dakota to respond to your inquiry regarding Mr. Hayes.  My response is provided as a courtesy to your office, and should not be construed as any appearance or waiver of any subject matter or personal jurisdictional defenses my client may possess.  As previously related, Western Sky is a wholly Cheyenne River Sioux Tribal Member owned business and is located and operates exclusively within the exterior boundaries of the Cheyenne River Indian Reservation.

I have been informed by my client that Mr. Hayes' loan has been assigned to WS Funding, LLC.  I inquired with the Assignee and have been informed that Mr. Hayes' loan has been resolved and marked as "Paid in Full", with no other activity.  If that is not the case, I offer to act as a mediator to ensure that the Lakota principles of fair dealing and sensitivity are observed in negotiation.  If Mr. Hayes would like assistance, he should contact me at his earliest convenience.

I hope my response has helped address your concerns regarding Western Sky as presented in your letter.  I welcome an opportunity to discuss the matter more fully with you to address any additional concerns or questions you may have.

Sincerely,

Cheryl E. Laurenz-Bogue

| DUPREE | | FAITH | |
|---|---|---|---|
| Ziebach County Courthouse | 605.365.5171 (tele) | Butler Insurance Building, Suite 2 | 605.967.2529 (tele) |
| 200 Main St. | 605.365.5717 (fax) | 104 West 1st St. | 605.967.2527 (fax) |
| P.O. Box 400 | | P.O. Box 250 | |
| Dupree, SD  57623-0400 | | Faith, SD  57626-0250 | |

## DECLARATION OF ELIZABETH JACKSON

I, Elizabeth Jackson, pursuant to 28 U.S.C. § 1746 hereby declare under penalty of perjury the following is true and correct:

1. My name is Elizabeth Jackson. I am over twenty-one years of age and am fully competent to make the statements contained herein. I am one of the Plaintiffs in the case of *Brown v. CashCall* that was brought in North Carolina Federal Court and is now in the Tribal Court.

2. I am a resident of Lumberton, Robeson County, North Carolina.

3. In June 2011, I was having a hard time financially. My adult son had an honorable 11-year U.S. Marine Corps career and was a Staff Sergeant, but, a battle with bone cancer had led to surgeries and metal rods in his leg and he could not meet the physical requirements to continue.

4. He had to leave the service and move off base and his income was very limited as was mine.

5. That was when I saw a TV ad for Western Sky loans and received a loan in the amount of approximately $1000 in or about July 2011.

6. I ultimately paid back approximately $1500 on this loan.

7. CashCall was automatically debiting my bank account for payments from approximately August 2011 through April 2012.

8. After some time, I called the company and was shocked when they told me how much they claimed that I still owed. It was like I had not paid hardly anything on the loan.

9. I complained to the North Carolina Attorney General regarding the loan on June 4, 2012. (See attached Exhibit).

10. The Attorney General wrote to Western Sky on June 6, 2012. But, CashCall to this day has never refunded my money or paid any damages or cancelled the loan or admitted any wrongdoing.

11. I am concerned that my interest and those of other North Carolina residents and loan borrowers will be affected by the proposed new settlement in South Dakota. I ask for the Court's permission to intervene in the South Dakota case in order to protect my interests and those of other North Carolina residents.

12. I believe that any settlement of the Western Sky loan scheme needs to be fair and just. I also believe that the loans made to people in North Carolina were usury and were void.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

**EXECUTED** this _18_ day of November, 2015 in Lumberton, North Carolina.


Signed: _Elizabeth Jackson_
          Elizabeth Jackson

**Elizabeth Jackson materials (Jackson complaint to Attorney General, Attorney General letter to Western Sky/CashCall, Bogue letter to Attorney General).**

**Day, Jennifer**

| | |
|---|---|
| **From:** | consforms@ncdoj.gov |
| **Sent:** | Monday, June 04, 2012 8:29 PM |
| **To:** | Consumer |
| **Subject:** | Complaint 23104 Jackson |

# Your Information

| | | | |
|---|---|---|---|
| Prefix | Mr | * First Name | Elizabeth |
| Middle Initial | | * Last Name | Jackson |
| * Mailing Address | 155 Ridgefield Drive | | |
| * City | Lumberton | | |
| * State | NC | * Zip Code | 28358 |

Country, if not US
Day Phone Number (including area code) 
Evening Phone Number (including area code)
Cell Phone Number (including area code)
Fax Number (including area code)
County of Residence        Robeson        Email Address

# Information About Company Against Which You Are Complaining

| | |
|---|---|
| * Full name of company | Western Sky/Cashcall |
| Address | POB 66007 |
| City | Anaheim |
| State | CA        Zip Code        92816 |
| Country, if not US | |
| Company's internet address (URL) | www.cashcall.com |
| * Telephone number, including area code | 1-877-525-2274 |
| Fax number, including area code | |

# Complaint Information (complete any blocks which apply to your complaint)

Product, item, or service involved        payday lending

Date of purchase, service, contract  7/1/2011 12:00:00 AM

Manufacturer or brand

Model

Account number 

Do not submit credit card or bank account numbers through this form. If you need to provide that information as part of your complaint, please mail it to us instead.

Serial number

| | |
|---|---|
| Did you sign a contract or a lease? | Yes |

| Start Date | | End Date | |
|---|---|---|---|
| Total amount paid | 1363.00 | Amount in dispute | 1600.00 |
| How was payment made: | Other | | |
| Did you buy an extended service contract? | No | | |

If yes, name of company responsible for extended service contract or warranty

## Information About the Transaction

How was initial contact made between you and the — I responded to a Website or e-mail solicitation

Where did the transaction take place? — Via computer (website or e-mail)

## Details of Complaint

* Details

Limit of 2500 characters

In July of 2011 i did a payday loan in amount of $1000.00, in May of 2012 I have closed checking acct that the ACH was being deducted in amt of $166.00 monthly. I have paid $1363.00 towards this loan and to date the balance on this acct is over $1600.00. I will not make any more payments to this company. Orginially i responded to Western Sky about the loan, three days before 1st payment to be deducted i recieved email from Cashcall. I have paid the amount that i borrowed and and i will not pay anymore. I feel that i am a victim of predatory lending and i will not have any more monies taken from me. I am being harrassed by this company and will not take any calls at work, this could cause me to lose my job. This company has already contacted Human Resources a second time to verify employement. I need your help in stopping this company from the harrassment that they are causing. Thank you, Elizabeth Jackson

## Resolution Attempts You Have Made

Have you contacted the company — No

with your complaint?

If yes, name of person most recently contacted

His/her phone number, incl. area code

Results

\* What resolution would you consider fair?

The only resolution i feel is fair is the acct be considered paid in full, i have pd more the borrowed amt.

Do you have an attorney in this case? No

If yes, name of your attorney

Attorney's number, incl. area code

Has your complaint been heard or is it scheduled to be heard in court?    No

If yes, where and when?

If already heard, what was the result?

Will you be submitting documentation by mail or fax?



# State of North Carolina

**ROY COOPER**
**ATTORNEY GENERAL**

Department of Justice
9001 Mail Service Center
Raleigh, NC 27699-9001

June 6, 2012

**CONSUMER PROTECTION**
Toll Free In NC
**(877) 566-7226**
Outside of NC
**(919) 716-6000**
Fax: **(919) 716-6050**

Western Sky/Cash Call
P O Box 370
Timber Lake, SD 57656

Re:   **File No. 1208048**
Elizabeth Jackson
155 Ridgefield Drive
Lumberton, NC  28358

Dear Sir:

Enclosed is a copy of correspondence received by this office regarding your company.  Please review and respond in writing within fifteen (15) business days after receipt of this letter as to your position on this matter.   In your response refer to File Number 1208048.

Very truly yours,

Jennifer S. Day
Consumer Protection Specialist
CONSUMER PROTECTION DIVISION

Enclosure
cc:   Elizabeth Jackson

# BOGUE & BOGUE, LLP

LAW OFFICES

Cheryl Laurenz-Bogue
Eric H. Bogue

Respond to Faith Office

JUN 2 2 2012

June 19, 2012

Jennifer S. Day
Consumer Protection Specialist
NC Dept. Of Justice
9001 Mail Service Center
Raleigh, NC 27699-9001

RE:     Ms. Elizabeth Jackson, Complainant
        Your File #: 1208048

Dear Ms. Day:

I have been retained by Western Sky Financial, LLC of Timber Lake, South Dakota (Western Sky) to respond to your letter dated June 6, 2012, received June 15, 2012. As I have previously relayed to you, my client's business is wholly tribal member owned, located on the Cheyenne River Indian Reservation in Western South Dakota. My letter should not be construed as an appearance in the State of North Carolina or an acknowledgment of waiver of personal or subject matter jurisdiction in this matter. Moreover, my client does not own or operate Cash Call, which is listed in the address line of your letter. Please correct your data base to reflect such information.

As stated previously, Western Sky operates solely and exclusively under Federal Indian Law and the laws and regulations of the Cheyenne River Sioux Tribe. Extensive case law supports this interpretation. See, Montana v. US, 450 U.S. 544, 565-566 (1981). "It is well settled that civil jurisdiction over activities of non-Indians concerning transactions taking place on Indian lands presumptively lies in the tribal courts unless affirmatively limited by specific treaty provision or federal statute." White Mountain Apache Tribe v. Smith Plumbing Co., 856 F.2d 1301, 1305 (9th Cir. 1988), quoting Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 18, (1987).

I have inquired with my client as to Ms. Jackson's particular situation. Ms. Jackson contacted Western Sky to apply for a $1,000.00 Western Sky loan and was approved. Ms. Jackson was fully aware of the applicable choice of law and jurisdiction conditions contained in the loan document. The loan document clearly indicates all items as would be required under the Truth in Lending Act, specifically outlining the Annual Percentage rate (APR) and total Finance Charge. Moreover, Ms. Jackson received a call regarding the terms and conditions of the loan and was given an opportunity to ask any questions or address any concerns. She gave no indication that

**DUPREE**
Ziebach County Courthouse          605.365.5171 (tele)
200 Main St.                       605.365.5717 (fax)
P.O. Box 400
Dupree, SD 57623-0400

**FAITH**
Butler Insurance Building, Suite 2    605.967.2529 (tele)
104 West 1st St.                      605.967.2527 (fax)
P.O. Box 250
Faith, SD 57626-0250

she did not understand or did not agree to the terms and conditions of the loan. Western Sky has since assigned Ms. Jackson's note to WS Funding, LLC. My client was informed by the assignee that Ms. Jackson was offered several different payment plans from a reduced lump sum to a reduction of interest. My client was informed that Ms. Jackson has not responded to such offers. If Ms. Jackson is truly experiencing financial or personal difficulties, my client has authorized me to proceed as a mediator to ensure that the Lakota principles of fair dealing and sensitivity are applied in Ms. Jackson's situation. Ms. Jackson or her representative may contact me at my office should she desire to discuss the matter more fully.

I would welcome an opportunity to discuss the matter more fully with you to address this matter or any additional concerns and questions you may have.

Sincerely,

Cheryl F. Laurenz-Bogue

cc:     client

## DECLARATION OF LESLIE JAN LYDON

I, Leslie Jan Lydon, pursuant to 28 U.S.C. § 1746 hereby declare under

penalty of perjury the following is true and correct:

1.     My name is Leslie Jan Lydon. I am over twenty-one years of age and am fully competent to make the statements contained herein. I am one of the Plaintiffs in the case of *Brown v. CashCall* that was brought in North Carolina Federal Court and is now in the Tribal Court.

2.     I live in Wilmington, New Hanover County, North Carolina.

3.     In late 2011, I had been out of work for a significant period of time, had undergone medical and other issues and had just relocated to North Carolina. I was in financial hardship.

4.     I called the phone number for Western Sky after I saw one of their TV ads.

5.     I received a Western Sky loan in or about December 2011 for approximately $2,500.

6.     I gave Western Sky my checking account number and CashCall started withdrawing funds the following month. The funds were withdrawn from my account on a monthly basis for a significant period of time and I paid back more money than I ever borrowed totaling approximately $3,375.

7. The last payment I made on the loan was on or about November 1, 2012. CashCall took payments out of my checking account electronically every month in the amount of approximately $294 per payment. These payments caused me financial hardship.

8. I complained to the North Carolina Attorney General on or about December 20, 2012. (See documents attached as Exhibit).

9. The Attorney General sent letters to Western Sky including on December 31, 2012 in which the Attorney General advised that the company was "offering payday loans to North Carolina consumers" and "payday loans are not authorized in North Carolina."

10. However, CashCall kept on making collection efforts after receiving the Attorney General's letter.

11. I am concerned that my interest and those of other North Carolina residents and loan borrowers will be affected by the proposed new settlement in South Dakota. I ask for the Court's permission to intervene in the South Dakota case in order to protect my interests and those of other North Carolina residents.

12. I believe that any settlement of the Western Sky loan scheme needs to be fair and just. I also believe that the loans made to people in North Carolina were usury and were void.

2

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

EXECUTED this _11_ day of November, 2015 in Wilmington, North Carolina.

Signed: _Leslie Jan Lydon_ .
Leslie Jan Lydon

\ . **Leslie Jan Lydon materials (Lydon complaint to Attorney General, Attorney General letter to Western Sky, Bogue letter to Attorney General).**

**Day, Jennifer**

**From:**        consforms@ncdoj.gov
**Sent:**        Thursday, December 20, 2012 2:25 PM
**To:**          Consumer
**Subject:**     Complaint 28067 Lydon

## Your Information

| | | | |
|---|---|---|---|
| Prefix | Ms | * First Name | Leslie |
| Middle Initial | J | * Last Name | Lydon |
| * Mailing Address | 4203 Trace View Dr. Apt. 310 | | |
| * City | Winston Salem | | |
| * State | NC | * Zip Code | 27106 |

Country, if not US
Day Phone Number (including area code) 
Evening Phone Number (including area code)
Cell Phone Number (including area code)
Fax Number (including area code)
County of Residence      Forsyth     Email Address 

## Information About Company Against Which You Are Complaining

| | |
|---|---|
| * Full name of company | Western Sky(Cash Call) |
| Address | Western Sky, at: P.O. Box 370 |
| City | Timber Lake |
| State | SD    Zip Code    57656 |
| Country, if not US | |
| Company's internet address (URL) | |
| * Telephone number, including area code | (714) 221-3300 |
| Fax number, including area code | |

## Complaint Information (complete any blocks which apply to your complaint)

Product, item, or service involved        High-interest (139.15%)

Date of purchase, service, contract  12/11/2011 12:00:00 AM

Manufacturer or

brand

Model

Account number

Do not submit credit card or bank account numbers through this form. If you need to provide that information as part of your complaint, please mail it to us instead.

Serial number

| | |
|---|---|
| Did you sign a contract or a lease? | Yes |
| Start Date | 12/11/2011 12:00:00 AM |
| End Date | |
| Total amount paid | $3357 |
| Amount in dispute | $2500 |
| How was payment made: | Cash |
| Did you buy an extended service contract? | No |
| If yes, name of company responsible for extended service contract or warranty | |

## Information About the Transaction

How was initial contact made between you and the

I responded to radio/television ad

Where did the transaction take place?

Over the phone

## Details of Complaint

* Details

Limit of 2500 characters

My contract states that I will make one payment of $136.50 on December 1, 2011 and 47 monthly payments of $294.46 beginning January 1, 2012. The Truth in Lending Act Disclosure Statement at the top of page one clearly displays the Annual Percentage rate ("APR") as 139.13% and Total Finance Charge of $11,451.12. The APR was disclosed in accordance with the requirements of the Truth in Lending Act. Notwithstanding these disclosures, borrowers are free to pay their loan in part or in full at anytime without penalty. The original loan amount was $2500. I have made 12 of 48 payments to this loan, totaling $3,375.56. The last payment was received November 1, 2012. The payoff balance as of December 13, 2012 is $2,964.23; the remaining principal balance is $2,561.13. I was unemployed for 13 months after my company was bought by Bank of America. I had suffered an anerisym, after going back to school, but was unable to find a job in Buffalo, NY. Bank of America finally placed me, but the job was in North Carolina. I had to borrow $2500 to move from a userous lender advertised on TV in order to move. They are called, "Cash Call" but they are affiliated with an American Indian Organization (Western Sky). My loan

2

was for $2500, and I believe the interest is 300%. I have paid $3375 already, and just cannot afford to pay any more. I don't make enough to pay any extra to the principal (which they say is the only way it can be paid off). The payments come out of my checking account every month at $294. I am afraid, I will never get out of this. I need car repairs to keep my job but cannot not afford another car because of this monthly payment. They knew I was divorced, over 53 and alone, and I had no other alternatives. I have to work! They also said they were cheaper than a pay day loan which is a complete falsehood. I feel that I will never get out from under this and will be paying over $12,000 for a $2500 loan! I have already paid $3375 already... Please advise. Leslie Jan Lydon

# Resolution Attempts You Have Made

Have you contacted the company with your complaint?    Yes

If yes, name of person most recently contacted    Complaint resolution

His/her phone number, incl. area code    (714) 221-3300

Results    In light of my hardships, CashCall is willing to either (i) reduce my interest rate to 30% which in turn will greatly reduce her monthly payment or (ii) settle the account for a lump sum of $1,800.

* What resolution would you consider fair?    another $1000, maximum and loan showed paid in full. The remainder taken in monthly installments of $150 a month I couls do.

Do you have an attorney in this case?    No

If yes, name of your attorney

Attorney's number, incl. area code

Has your complaint been heard or is it scheduled to be heard in court?    No

If yes, where and when?

If already heard, what was the result?

Will you be submitting documentation by mail or fax?    No



# State of North Carolina

| ROY COOPER | Department of Justice | CONSUMER PROTECTION |
|---|---|---|
| ATTORNEY GENERAL | 9001 Mail Service Center | Toll Free In NC |
| | Raleigh, NC 27699-9001 | (877) 566-7226 |
| | | Outside of NC |
| | | (919) 716-6000 |
| | | Fax: (919) 716-6050 |

December 31, 2012

Western Sky Financial
P O Box 370
Timber Lake, SD 57656

Re: File No. 1219233
Leslie J Lydon
4203 Trace View Drive
Apt 310
Winston-Salem, NC 27106

Dear Sir:

This office has received a consumer complaint regarding your company from the above referenced individual. A copy of the complaint is enclosed for your review.

It appears that your company is offering payday loans to North Carolina consumers. You should be aware that payday loans are not authorized in North Carolina. North Carolina's Consumer Finance Act, N. C. Gen. Stat. § 53-164 et seq., regulates small consumer loans and allows a maximum interest rate of up to 36% for licensed lenders. Further, N. C. Gen. Stat. § 53-166(d) provides that consumer loans under $10,000 made in violation of the Consumer Finance Act are void. Loans made by out-of-state lenders to North Carolina residents can be subject to our usury laws. N. C. Gen. Stat. § 24-2.1 states that any solicitation to lend originating outside of this State, but forwarded to and received in this State by a borrower who is a resident of this State shall be deemed to be an offer or agreement to lend in this State. Further, under that statute any communication to borrow from a North Carolina consumer to an out-of-state lender shall be deemed to be an acceptance to borrow in this State.

We request that you respond within fifteen (15) business days to the enclosed consumer complaint and that you state your intentions to comply with North Carolina law. Because of the serious legal issues raised by the enclosed complaint, we request that you cease and desist from further collection activity on this account. When responding, please refer to File No. 1219233.

Sincerely,

Jennifer S. Day
Consumer Protection Specialist
CONSUMER PROTECTION DIVISION

Enclosure

cc:    Leslie J Lydon

# BOGUE & BOGUE, LLP

## LAW OFFICES

Cheryl Laurenz-Bogue
Eric H. Bogue

JAN 1 4 2013

Respond to Faith Office

January 10, 2013

Jennifer S. Day
9001 Mail Service Center
Raleigh, NC 27699-9001

RE:    Leslie Lydon, Complainant
       Your File #: 1219233

Dear Ms. Day:

I have been retained by Western Sky Financial, LLC of Timber Lake, South Dakota (Western Sky) to respond to your letter regarding Ms. Lydon.  As I have previously relayed to you, my client's business is wholly tribal member owned, located on the Cheyenne River Indian Reservation in Western South Dakota.  My letter should not be construed as an appearance in the State of North Carolina or an acknowledgment of waiver of personal or subject matter jurisdiction in this matter.

Also stated previously, Western Sky operates solely and exclusively under Federal Indian Law and the laws and regulations of the Cheyenne River Sioux Tribe.  Extensive case law supports this interpretation.  See, Montana v. US, 450 U.S. 544, 565-566 (1981).  "It is well settled that civil jurisdiction over activities of non-Indians concerning transactions taking place on Indian lands presumptively lies in the tribal courts unless affirmatively limited by specific treaty provision or federal statute."  White Mountain Apache Tribe v. Smith Plumbing Co., 856 F.2d 1301, 1305 (9th Cir. 1988), quoting Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 18, (1987).

I have inquired with my client as to Ms. Lydon's particular situation.  Ms. Lydon contacted Western Sky to apply for a $ 2,600.00 Western Sky loan and was approved and funded 11/17/2011.  Ms. Lydon was fully aware of the applicable choice of law and jurisdiction conditions contained in the loan document.  The loan document clearly indicates all items as would be required under the Truth in Lending Act, specifically outlining the Annual Percentage rate (APR) and total Finance Charge.  Moreover, Ms. Lydon received a call regarding the terms and conditions of the loan and was given an opportunity to ask any questions or address any concerns.  She gave no indication that she did not understand or did not agree to the terms and conditions of the loan.  Western Sky has since assigned Ms. Lydon's note to WS Funding, LLC.

My client was informed by the assignee that Ms. Lydon has reached a modification her loan

**DUPREE**

Ziebach County Courthouse
200 Main St.
P.O. Box 400
Dupree, SD 57623-0400

605.365.5171 (tele)
605.365.5717 (fax)

**FAITH**

Butler Insurance Building, Suite 2
104 West 1st St.
P.O. Box 250
Faith, SD 57626-0250

605.967.2529 (tele)
605.967.2527 (fax)

which reduced her interest to 30% for the remaining balance of her loan. Ms. Lydon confirmed her monthly payment of $ 108.72 as an amount that she can afford in her situation. My client is pleased that Ms. Lydon's concerns have been adequately addressed by the assignee.

I would welcome an opportunity to discuss the matter more fully with you to address this matter or any additional concerns and questions you may have.

Sincerely,

Cheryl F. Laurenz-Bogue

cc:     client

# DECLARATION OF MONICA JOHNSON

I, Monica Johnson, pursuant to 28 U.S.C. § 1746 hereby declare under penalty of perjury the following is true and correct:

1.  My name is Monica Johnson. I am over twenty-one years of age and am fully competent to make the statements contained herein. I am one of the Plaintiffs in the case of *Brown v. CashCall* that was brought in North Carolina Federal Court and is now in the Tribal Court.

2.  I am a resident of Clemmons, Forsyth County, North Carolina.

3.  In August 2011, I was in a state of financial hardship.

4.  I saw a TV ad for Western Sky loans. On or about August 17, 2011, they loaned me $2,600. (See attached Exhibit).

5.  They kept $75 of that amount as a "Prepaid Finance Charge/ Origination Fee," so that the amount actually sent to me was only $2,525.

6.  The loan said that I was to make 48 monthly payments. I have learned that the nominal APR of my loan is 139% and the effective APR is 273%, resulting in total payments to Defendants of $13,985.87, more than five times the amount borrowed.

7.  I am concerned that my interest and those of other North Carolina residents and loan borrowers will be affected by the proposed new settlement in

1

South Dakota. I ask for the Court's permission to intervene in the South Dakota case in order to protect my interests and those of other North Carolina residents.

8.    I believe that any settlement of the Western Sky loan scheme needs to be fair and just. I also believe that the loans made to people in North Carolina were usury and were void.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

**EXECUTED** this 17th day of November, 2015 in Clemmons, North Carolina.

Signed: _Monica Johnson_
              Monica Johnson

2

**Monica Johnson Western Sky loan agreement & Declaration.**

# WESTERN SKY CONSUMER LOAN AGREEMENT

| Loan No.: | 7329873 | Date of Note: | August 17, 2011 |
| | | Expected Funding Date: | August 17, 2011 |
| Lender: | Western Sky | Borrower: | MONICA JOHNSON |
| Address: | P.O. Box 370 Timber Lake, SD 57656 | Address: | 2026 MEGAN CT APT A CLEMMONS, NC 27012 |

In this Consumer Loan Agreement ("Agreement"), the words "you" and "your" mean the person signing as a borrower. "We," "us," "our," and "Lender" mean Western Sky, a lender organized and authorized by the laws of the Cheyenne River Sioux Tribal Nation and the Indian Commerce Clause of the Constitution of the United States of America, and any subsequent holder of this Note ("Western Sky"). All credit and lending decisions were made by Western Sky, LLC, and this loan will be funded by Western Sky. Neither this Agreement nor Lender is subject to the laws of the United States.

## TRUTH IN LENDING ACT DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you | The amount you will have paid after all payments are made as scheduled |
| 139.13 % | $11,460.87 | $2,525.00 | $13,985.87 |

### PAYMENT SCHEDULE

One payment of $146.25 on September 01, 2011.

47 monthly payments of $294.46 beginning on October 01, 2011.

**Late Charge:** If a payment is more than 15 days late, you will be charged $29.00.

**Prepayment:** If you pay off this loan early, you will not have to pay any penalty.

Please see the remainder of this document for additional information about nonpayment, default and any required repayment in full before the scheduled date.

## ITEMIZATION OF AMOUNT FINANCED

| Amount Financed: | $2,525.00 |
| Amount Paid to Borrower Directly: | $2,525.00 |
| Prepaid Finance Charge/Origination Fee: | $75.00 |

You promise to pay to the order of Western Sky or any subsequent holder of this Note the sum of $2,600.00, together with interest calculated at 135.00 % per annum and any outstanding charges or late fees, until the full amount of this Note is paid. You promise to repay this loan by making, at a minimum, the payments described on the payment schedule listed above.

Payments will be applied first to any outstanding charges or late fees, then to earned interest and finally to principal. The payment schedule described above may change in the event you do not make all payments as scheduled or in the event you accrue any fees.

Interest is calculated on a 360/360 simple interest basis. This means that interest is calculated by dividing the annual Interest Rate by 360, multiplying that number by the outstanding principal balance, and multiplying that number by the number of days the principal balance is outstanding.

You may prepay all or any part of the principal without penalty.

If you fail to make any payment due hereunder, the holder of this Note shall have the right, after a 30-day grace period, to declare this note to be immediately due and payable. If you file for an assignment for the benefit of creditors, or for bankruptcy, the holder of this Note shall have the right to declare this Note to be immediately due and payable.

Except as may be provided in the "Arbitration" section of this Note, if we are required to employ an attorney at law to collect any amounts due hereunder, you will be required to pay the reasonable fees of such attorney to protect our interest or to take any other action required to collect the amounts due hereunder.

The Prepaid Finance Charge disclosed above is fully earned upon loan origination and is not subject to rebate upon prepayment or acceleration of this Note.

**LATE FEES.** You will be subject to a late fee of $29.00 if you fail to make your payment within 15 days of the due date. We can collect any late fees immediately via Electronic Funds Transfer (EFT) from your bank account.

**INSUFFICIENT FUNDS.** You will be subject to a fee of $29.00 if any payment you make is returned by your bank for insufficient funds.

**E-SIGN/ELECTRONIC COMMUNICATIONS.** Although federal law does not apply to this Agreement, this Note is in original format an electronic document fully compliant with the Electronic Signatures in Global and National Commerce Act (E-SIGN) and other applicable laws and regulations, and the one, true original Note is retained electronically by us. All other versions hereof, whether electronic or in tangible format, constitute facsimiles or reproductions only. You understand that you have previously consented to receive all communications from us, including but not limited to all required disclosures, electronically.

**CREDIT REPORTS.** You agree that we may obtain credit reports on you on an ongoing basis as long as this loan remains in effect. You also authorize us to report information concerning this account to credit bureaus and anyone else we believe in good faith has a legitimate need for such information. Late payments, missed payments, or other defaults on this account may be reflected in your credit report.

**CALL MONITORING/RECORDING.** You understand that, from time to time, we may monitor or record telephone calls between us for quality assurance purposes. You expressly consent to have your calls monitored or recorded.

**TELEPHONE CALLS.** You hereby agree that in the event we need to contact you to discuss your account or the repayment of your loan, we may telephone you at any number, including any cell phone number provided, and that we may leave an autodialed or prerecorded message or use other technology to make that contact or to communicate to you the status of your account.

**VERIFICATION.** You authorize us to verify all of the information you have provided in obtaining approval of this Loan.

**GOVERNING LAW.** This Agreement is governed by the Indian Commerce Clause of the Constitution of the United States of America and the laws of the Cheyenne River Sioux Tribe. We do not have a presence in South Dakota or any other states of the United States. Neither this Agreement nor Lender is subject to the laws of any state of the United States of America. By executing this Agreement, you hereby expressly agree that this Agreement is executed and performed solely within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation. You also expressly agree that this Agreement shall be subject to and construed in accordance only with the provisions of the laws of the Cheyenne River Sioux Tribe, and that no United States state or federal law applies to this Agreement. You agree that by entering into this Agreement you are voluntarily availing yourself of the laws of the Cheyenne River Sioux Tribe, a sovereign Native American Tribal Nation, and that your execution of this Agreement is made as if you were physically present within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation.

**ASSIGNMENT.** We may assign or transfer this Loan Agreement or any of our rights under it at any time to any party.

**WAIVER OF JURY TRIAL AND ARBITRATION.**

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.** Unless you exercise your right to opt-out of arbitration in the manner described below, any dispute you have with Western Sky or anyone else under this loan agreement will be resolved by binding arbitration. Arbitration replaces the right to go to court, including the right to have a jury, to engage in discovery (except as may be provided in the arbitration rules), and to participate in a class action or similar proceeding. In Arbitration, a dispute is resolved by an arbitrator instead of a judge or jury. Arbitration procedures are simpler and more limited than court procedures. Any Arbitration will be limited to the dispute between yourself and the holder of the Note and will not be part of a class-wide or consolidated Arbitration proceeding.

**Agreement to Arbitrate.** You agree that any Dispute, except as provided below, will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement.

**Arbitration Defined.** Arbitration is a means of having an independent third party resolve a Dispute. A "Dispute" is any controversy or claim between you and Western Sky or the holder or servicer of the Note. The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future, including events that occurred prior to the opening of this Account), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e. money, injunctive relief, or declaratory relief). A Dispute includes, by way of example and without limitation, any claim based upon marketing or solicitations to obtain the loan and the handling or servicing of my account whether such Dispute is based on a tribal, federal or state constitution, statute, ordinance,

regulation, or common law, and including any issue concerning the validity, enforceability, or scope of this loan or the Arbitration agreement. For purposes of this Arbitration agreement, the term "the holder" shall include Western Sky or the then-current note holder's employees, officers, directors, attorneys, affiliated companies, predecessors, and assigns, as well as any marketing, servicing, and collection representatives and agents.

**Choice of Arbitrator.** Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested at the address appearing at the top of this Loan Agreement of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Arbitration shall be conducted in the Cheyenne River Sioux Tribal Nation by a panel of three Tribal Elders and shall be conducted in accordance with the Cheyenne River Sioux Tribal Nation's consumer rules and the terms of this Agreement. You may appear at Arbitration via telephone or video conference, and you will not be required to travel to the Cheyenne River Sioux Tribal Nation. The party receiving notice of Arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. You understand that if you demand Arbitration, you must inform us of your demand of the Arbitrator you have selected. You also understand that if you fail to notify us, then we have the right to select the Arbitrator.

**Cost of Arbitration.** We will pay the filing fee and any costs or fees charged by the arbitrator regardless of which party initiates the Arbitration. Except where otherwise provided by the law of the Cheyenne River Sioux Tribal Nation, each party will be responsible for its own attorneys' fees and other expenses. Unless prohibited by law, the arbitrator may award fees, costs, and reasonable attorneys' fees to the party who substantially prevails in the Arbitration.

**Waiver of Rights.** YOU HEREBY AGREE THAT YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL, TO HAVE A COURT DECIDE YOUR DISPUTE, TO PARTICIPATE IN A CLASS ACTION LAWSUIT, AND TO CERTAIN DISCOVERY AND OTHER PROCEDURES THAT ARE AVAILABLE IN A LAWSUIT. The arbitrator has the ability to award all remedies available by statute, at law, or in equity to the prevailing party, except that the parties agree that the arbitrator has no authority to conduct class-wide proceedings and will be restricted to resolving the individual disputes between the parties. The validity, effect, and enforceability of this waiver of class action lawsuit and class-wide Arbitration is to be determined solely by a court of competent jurisdiction located within the Cheyenne Rivers Sioux Tribal Nation, and not by the arbitrator. If the court refuses to enforce the class-wide Arbitration waiver, or if the arbitrator fails or refuses to enforce the waiver of class-wide Arbitration, the parties agree that the Dispute will proceed in tribal court and will be decided by a tribal court judge, sitting without a jury, under applicable court rules and procedures.

**Applicable Law and Judicial Review.** THIS ARBITRATION PROVISION IS MADE PURSUANT TO A TRANSACTION INVOLVING THE INDIAN COMMERCE CLAUSE OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA, AND SHALL BE GOVERNED BY THE LAW OF THE CHEYENNE RIVER SIOUX TRIBE. The arbitrator will apply the laws of the Cheyenne River Sioux Tribal Nation and the terms of this Agreement. The arbitrator must apply the terms of this Arbitration agreement, including without limitation the waiver of class-wide Arbitration. The arbitrator will make written findings and the arbitrator's award may be filed in the Cheyenne River Sioux Tribal Court, which has jurisdiction in this matter. The Arbitration award will be supported by substantial evidence and must be consistent with this Agreement and applicable law or may be set aside by a court upon judicial review.

**Small Claims Exception.** All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal in the Cheyenne River Sioux Tribal Small Claims Court for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration.

**Other Provisions.** This Arbitration provision will survive: (i) termination or changes in this

Agreement, the Account, or the relationship between us concerning the Account; (II) the bankruptcy of any party; and (III) any transfer, sale or assignment of my Note, or any amounts owed on my account, to any other person or entity. This Arbitration provision benefits and is binding upon you, your respective heirs, successors and assigns. It also benefits and is binding upon us, our successors and assigns, and related third parties. The Arbitration Provision continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy. The Arbitration Provision survives any termination, amendment, expiration, or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing. If any of this Arbitration Provision is held invalid, the remainder shall remain in effect

**Right to Opt Out.** If you do not wish your account to be subject to this Arbitration Agreement, you must advise us in writing at P.O. Box 370, Timber Lake, South Dakota, 57565, or via e-mail at info@westernsky.com. You must clearly print or type your name and account number and state that you reject Arbitration. You must give written notice; it is not sufficient to telephone us. We must receive your letter or e-mail within sixty (60) days after the date your loan funds or your rejection of Arbitration will not be effective. In the event you opt out of Arbitration, any disputes hereunder shall nonetheless be governed under the laws of the Cheyenne River Sioux Tribal Nation.

**THIS LOAN CARRIES A VERY HIGH INTEREST RATE. YOU MAY BE ABLE TO OBTAIN CREDIT UNDER MORE FAVORABLE TERMS ELSEWHERE. EVEN THOUGH THE TERM OF THE LOAN IS 48 MONTHS, WE STRONGLY ENCOURAGE YOU TO PAY OFF THE LOAN AS SOON AS POSSIBLE. YOU HAVE THE RIGHT TO PAY OFF ALL OR ANY PORTION OF THE LOAN AT ANY TIME WITHOUT INCURRING ANY PENALTY. YOU WILL, HOWEVER, BE REQUIRED TO PAY ANY AND ALL INTEREST THAT HAS ACCRUED FROM THE FUNDING DATE UNTIL THE PAYOFF DATE.**

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS AGREEMENT BEFORE YOU SIGN IT. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT.

| | |
|---|---|
| ☑ | YOU HAVE READ AND UNDERSTAND THE ARBITRATION SECTION OF THIS NOTE AND AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THAT SECTION. |
| ☑ | **YOU HAVE READ ALL OF THE TERMS AND CONDITIONS OF THIS PROMISSORY NOTE AND DISCLOSURE STATEMENT AND AGREE TO BE BOUND THERETO. YOU UNDERSTAND AND AGREE THAT YOUR EXECUTION OF THIS NOTE SHALL HAVE THE SAME LEGAL FORCE AND EFFECT AS A PAPER CONTRACT.** |

**CONSUMER COMPLAINTS** - If you have a complaint about our loan, please let us know. You can contact us at P.O. Box 370, Timber Lake, South Dakota, 57656, telephone (877) 860-2274.

## ELECTRONIC FUNDS AUTHORIZATION AND DISCLOSURE

You hereby authorize us to initiate electronic funds transfers ("EFTs") for withdrawal of your scheduled loan payment from your checking account on or about the FIRST day of each month. You further authorize us to adjust this withdrawal to reflect any additional fees, charges or credits to your account. We will notify you 10 days prior to any given transfer if the amount to be transferred varies by more than $50 from your regular payment amount. You also authorize us to withdraw funds from your account on additional days throughout the month in the event you are delinquent on your loan payments. You understand that this authorization and the services

undertaken in no way alters or lessens your obligations under the Loan Agreement. You understand that you can cancel this authorization at any time (including prior to your first payment due date) by sending written notification to us. Cancellations must be received at least three business days prior to the applicable due date. This EFT debit authorization will remain in full force and effect until the earlier of the following occurs: (i) you satisfy all of your payment obligations under this Loan Agreement or (ii) you cancel this authorization.

In addition, you hereby authorize us and our agents to initiate a wire transfer credit to your bank account to disburse the proceeds of this Loan.

☑ **YOU UNDERSTAND OUR PAYMENT COLLECTION PROCEDURE AND AUTHORIZE ELECTRONIC DEBITS FROM YOUR BANK ACCOUNT.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NUMBER 1:13-CV-00255-WO-JLW**

THOMAS BROWN, *et al.,*     )
     )
    Plaintiffs,    )
     )
v.     )
     )
WESTERN SKY FINANCIAL, LLC,    )
  *et al.,*    )
     )
    Defendants.    )

## DECLARATION OF MONICA JOHNSON

I, Monica Johnson, under penalty of perjury according to 28 U.S.C. § 1746, do hereby declare as follows:

1.    My name is Monica Johnson. I am over the age of eighteen (18). I have personal knowledge of the facts stated herein, and am fully competent to make the statements set forth below. I am a named Plaintiff in this action.

2.    In August 2011, I was in a state of financial hardship. I needed money to pay bills. I have a limited income because my job did not pay well. I was employed with the State of North Carolina in a job involving computers which I am glad to have but with limited pay.

3.    The way that I heard about Western Sky was I saw a TV commercial and I pulled up their website on my home computer, at my residence in Clemmons.

4.    I called the 800 number and spoke to a man who was a representative for Western Sky. He said they needed a bank statement, proof of income, voided check and driver's license. I faxed them this information. During the phone call, I do not recall any mention of arbitration. I do recall that he said my payments would go to CashCall who would service the loan.

5.    I never physically signed an actual contract, rather, I clicked on buttons on the website and there was an electronic form.

6.    The company electronically sent the money to my bank account (State Employees Credit Union).

7.    I paid monthly payments, typically of $294.46/month, for many months for over a year. The total I paid was around $4000. I stopped paying when I spoke to the law firm and had an understanding that the loan was illegal.

8.      After I stopped making payments, I got phone calls multiple times from CashCall.  I told them that they needed to talk to my lawyer and finally they stopped calling.

9.      I have never been to South Dakota and have never been on any Indian reservation in South Dakota.

I declare under the penalty of perjury that the foregoing is true and correct.

**EXECUTED** this 20th day of June, 2013 in Clemmons, North Carolina.

Monica Johnson

# DECLARATION OF RENEE HOLMES

I, Renee Holmes, pursuant to 28 U.S.C. § 1746 hereby declare under penalty of perjury the following is true and correct:

1.      My name is Renee Holmes. I am over twenty-one years of age and am fully competent to make the statements contained herein. I am one of the Plaintiffs in the case of *Brown v. CashCall* that was brought in North Carolina Federal Court and is now in the Tribal Court.

2.      I am a citizen and resident of Hillsborough, Orange County, North Carolina.

3.      In June-July 2011, I was in a position of financial duress. My job with the State Government provided modest pay. I was supporting two daughters with school and medical bills.

4.      I received a loan from Western Sky in the amount of $500 on or about July 5, 2011.

5.      I ultimately paid back over $1500 during the time period of August 2011 through June 2012.

6.      CashCall debited my bank account for $86.06 on August 5, 2011, $132.49 on October 7, 2011, $161.49 on December 23, 2011, $171.44 on February 2, 2012, $132.49 on February 15, 2012, $93.54 on March 16, 2012, $161.49 on

1

April 27, 2012, $161.49 on May 25, 2012, $161.49 on June 22, 2012, and I also mailed a check to CashCall on or about December 30, 2012 for $508.88.

7. I complained to the North Carolina Attorney General regarding the loan on or about July 12, 2012. (See Exhibit).

8. The Attorney General wrote to Western Sky forwarding the complaint. However CashCall continued making collection efforts. CashCall continued engaging in collection efforts against me through at least the latter half of 2012 and despite the Attorney General letter.

9. On September 5, 2012, a Delbert representative wrote to me seeking to collect on "[y]our CashCall loan." I made another payment because I was concerned about the collection efforts.

10. I am concerned that my interest and those of other North Carolina residents and loan borrowers will be affected by the proposed new settlement in South Dakota. I ask for the Court's permission to intervene in the South Dakota case in order to protect my interests and those of other North Carolina residents.

11. I believe that any settlement of the Western Sky loan scheme needs to be fair and just. I also believe that the loans made to people in North Carolina were usury and were void.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

**EXECUTED** this _15th_ day of November, 2015 in Hillsborough, North Carolina.

Signed: _Renee Holmes_

Renee Holmes

Renee Holmes materials (Holmes complaint to Attorney General, Attorney General letter to Western Sky regarding Holmes, Bogue firm letter to Attorney General regarding Holmes, Delbert email to Holmes and response).



**NORTH CAROLINA**
**DEPARTMENT OF JUSTICE**
ATTORNEY GENERAL **ROY COOPER**

Consumer ǀ File a Complaint ǀ Complaint Form

# FILE A COMPLAINT

* indicates a mandatory field

## Your Information

JUL 1 2 2012

| | | | |
|---|---|---|---|
| Prefix: | Ms. | * First Name: | Renee |
| Middle Initial: | D | * Last Name: | Holmes |
| * Mailing Address: | 223 Thomas Burke Drive | | |
| * City: | Hillsborough | | |
| * State: | NC | * Zip Code: | 27278 |

Country, if not US:

Day Phone Number (including area code):

Evening Phone Number (including area code):

Cell Phone Number (including area code):

Fax Number (including area code):

County of Residence: Orange    Email Address:

## Information About Company Against Which You Are Complaining

| | | | |
|---|---|---|---|
| * Full name of company: | Western Sky Loans | | |
| Address: | PO Box 370 | | |
| City: | Timber Lake | | |
| State: | SD | Zip Code: | 57656 |

Country, if not US:

Company's Internet address (URL):    unknown

* Telephone number, including area code: 6058653311

Fax number, including area code:

## Complaint Information (complete any blocks which apply to your complaint)

Product, item, or service involved: Personal Loan

Date of purchase, service, contract: [ ] Now

Manufacturer or brand:

Model:

Account number:

Do not submit credit card or bank account numbers through this form. If you need to provide that information as part of your complaint, please mail it to us instead.

Serial number:

Did you sign a contract or a lease?:  ⊙ Yes  ○ No

Start Date: [ ] Now          End Date: [ ] Now

Total amount paid:          Amount in dispute:

How was payment made:: Cash

Did you buy an extended service contract?: No

If yes, name of company responsible for extended service contract or warranty:

## Information About the Transaction

How was initial contact made between you and the: I responded to a Website or e-mail solicitation

Where did the transaction take place?:  Via computer (website or e-mail)

## Details of Complaint

I obtained a loan from Western Sky (Cash Call) in the amount of $500.00, July 05, 2011. My checking account was debited monthly to make the payments. I did not realize that the interest rate charged exceeded the legal amount North Carolina allowed.

Please see bank statements enclosed for payments made. Some payments may vary due to late charges.

Thank you,

Renee D. Holmes

* Details:

Limit of 2500
characters

## Resolution Attempts You Have Made

Have you contacted the company with your complaint?:  No

If yes, name of person most recently contacted:

His/her phone number, incl. area code:

Results:

**\* What resolution would you consider fair?:**

Stop all collection efforts
and refund the amount I
overpaid in accordance with
North Carolina law.

Do you have an attorney in this case?:    No

If yes, name of your attorney:

Attorney's number, incl. area code:

Has your complaint been heard or is it scheduled to be heard in court?:    No

If yes, where and when?:

If already heard, what was the result?:

Will you be submitting documentation by mail or fax?:    Yes

Please attach up to four supporting documents in pdf, doc, docx or txt format. You may also mail supporting documents to us.

Attachment 1:    Upload:    Browse...

Attachment 2:    Upload:    Browse...

Attachment 3:    Upload:    Browse...

Attachment 4:    Upload:    Browse...

PLEASE NOTE: The maximum size of your submission is 15 Mb including the form and all attachments. If you receive an error that says "maximum request exceeded", you need to reduce the size of your attachments or contact Consumer Protection directly to provide the attachments.



# State of North Carolina

**ROY COOPER**
**ATTORNEY GENERAL**

Department of Justice
9001 Mail Service Center
Raleigh, NC 27699-9001

July 19, 2012

**CONSUMER PROTECTION**
Toll Free In NC
(877) 566-7226
Outside of NC
(919) 716-6000
Fax: (919) 716-6050

Western Sky
P O Box 370
Timber Lake, SD 57656

Re: File No. 1210263
Renee D Holmes
223 Thomas Burke Drive
Hillsborough, NC 27278

Dear Sir:

Enclosed is a copy of correspondence received by this office regarding your company. Please review and respond in writing within fifteen (15) business days after receipt of this letter as to your position on this matter. In your response refer to File Number 1210263.

Very truly yours,

Jennifer S. Day
Consumer Protection Specialist
CONSUMER PROTECTION DIVISION

Enclosure
cc: Renee D Holmes

# BOGUE *&* BOGUE, LLP

LAW OFFICES

Cheryl Laurenz-Bogue
Eric H. Bogue

JUL 3 0 2012

Respond to Faith Office

July 27, 2012

Jennifer S. Day
Consumer Protection Specialist
NC Dept. Of Justice
9001 Mail Service Center
Raleigh, NC 27699-9001

RE:  Ms. Renee D. Holmes, Complainant
     Your File #: 1210263

Dear Ms. Day:

I have been retained by Western Sky Financial, LLC of Timber Lake, South Dakota (Western Sky) to respond to your letter dated July 19, 2012, received July 23, 2012. As I have previously relayed to you, my client's business is wholly tribal member owned, located on the Cheyenne River Indian Reservation in Western South Dakota. My letter should not be construed as an appearance in the State of North Carolina or an acknowledgment of waiver of personal or subject matter jurisdiction in this matter.

As stated previously, Western Sky operates solely and exclusively under Federal Indian Law and the laws and regulations of the Cheyenne River Sioux Tribe. Extensive case law supports this interpretation. See, Montana v. US, 450 U.S. 544, 565-566 (1981). "It is well settled that civil jurisdiction over activities of non-Indians concerning transactions taking place on Indian lands presumptively lies in the tribal courts unless affirmatively limited by specific treaty provision or federal statute." White Mountain Apache Tribe v. Smith Plumbing Co., 856 F.2d 1301, 1305 (9th Cir. 1988), quoting Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 18, (1987).

I have inquired with my client as to Ms. Holmes's particular situation. Ms. Holmes contacted Western Sky to apply for a $ 850.00 Western Sky loan and was approved. Ms. Holmes was fully aware of the applicable choice of law and jurisdiction conditions contained in the loan document. The loan document clearly indicates all items as would be required under the Truth in Lending Act, specifically outlining the Annual Percentage rate (APR) and total Finance Charge. Moreover, Ms. Holmes received a call regarding the terms and conditions of the loan and was given an opportunity to ask any questions or address any concerns. She gave no indication that she did not understand or did not agree to the terms and conditions of the loan. Western Sky has since assigned Ms. Holmes's note to WS Funding, LLC. My client was informed by the assignee

| DUPREE | | FAITH | |
|---|---|---|---|
| Ziebach County Courthouse | 605.365.5171 (tele) | Butler Insurance Building, Suite 2 | 605.967.2529 (tele) |
| 200 Main St. | 605.365.5717 (fax) | 104 West 1st St. | 605.967.2527 (fax) |
| P.O. Box 400 | | P.O. Box 250 | |
| Dupree, SD 57623-0400 | | Faith, SD 57626-0250 | |

that Ms. Holmes is almost paid in full regarding this note, and that they would work to address Ms. Holmes' concerns. Ms. Holmes may contact WS Funding Representative Elissa at (714)221-3300 to negociate an mutually equitable solution. Although Western Sky assigned this loan to WS Funding, my client has authorized me to proceed as a mediator to ensure that the Lakota principles of fair dealing and sensitivity are applied in Ms. Holmes's situation. Ms. Holmes or her representative may contact me at my office should she desire to discuss the matter more fully.

I would welcome an opportunity to discuss the matter more fully with you to address this matter or any additional concerns and questions you may have.

Sincerely,

Cheryl R. Laurenz-Bogue

cc:     client

**John Hughes**

| | |
|---|---|
| **From:** | ████████████████████ |
| **Sent:** | Tuesday, July 02, 2013 2:05 PM |
| **To:** | John Hughes |
| **Subject:** | FW: Settlement Replacement Check |
| **Attachments:** | 20121230173631975.pdf; 20121230173625893.pdf |

From ████████████████████
To: jhughes@wallacegraham.com
Subject: FW: Settlement Replacement Check
Date: Tue, 2 Jul 2013 18:03:47 +0000

From ████████████████████
To: custserv@delbertservices.com
Subject: RE: Settlement Replacement Check
Date: Sun, 30 Dec 2012 23:20:50 +0000

Dear Steven:

Attached, please find a replacement check for the original that was sent to you indicating settlement vs. paid in full which you did not accept. The check has been mailed and hopefully this will resolve this issue.

Thanks you.

Renee Holmes

> Date: Wed, 5 Sep 2012 08:28:08 -0700
> From: custserv@delbertservices.com
> To: ████████████
> Subject: Please Contact Delbert Services
>
>
>
> RE: Loan # 6764661
>
> Dear Renee Holmes ,
>
> Attempts by this office to contact you have been unsuccessful.
>
> Be advised that your loan in the amount of $508.88 is payable in full at this time. Your CashCall loan was

1

referred to Delbert Services Corporation for final collection proceedings.

>
> Please contact me as soon as possible to arrange for payment in full or to make suitable payment arrangements.
>
>
> Sincerely,
>
> Steven Osowski
> Recovery Collector
> (888) 400-7750 x 3878
>
>
> This communication is an attempt to collect a debt and any information obtained will be used for this purpose. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

## STATEMENT OF INTEREST BY FLORIDA PLAINTIFF

1.      Pursuant to Federal Rule of Civil Procedure 24(c), this statement of interest is filed on behalf of Abraham Inetianbor, who provides notice regarding the nature of his position and interest and the claims for which intervention is sought. *See United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 834 (8th Cir. 2009) (describing nature of "statement of interest" under Rule 24(c)). Mr. Inetianbor asks to be allowed to intervene for purposes of challenging and objecting to the proposed class certification and settlement, and participating in any future settlement negotiations. *See Buchet v. ITT Consumer Financial Corp.*, 845 F.Supp. 684, 697 (D. Minn. 1994) ("That the motion by class member Joyce Blesi to intervene for the limited purpose of appealing any settlement approved by this Court and participating in future settlement negotiations is GRANTED").

2.      Mr. Inetianbor has sued on behalf of himself and other similarly situated individuals in the pending putative class action in the U.S. District Court for the Southern District of Florida, *Inetianbor v. CashCall, Inc., et al.*, Case No. 0:13-cv-60066, S.D. Fla. Mr. Inetianbor has moved to intervene in this matter as to all claims because he objects to the effect of the proposed class settlement with regard to the rights of Florida borrowers and the effect this case could have on his own case as well as one brought by the Florida Attorney General.

3.      Mr. Inetianbor desires to provide the Court with some detail as to the history of his own litigation with CashCall, as in fact the *Heldt* Plaintiffs and counsel relied on facts from his case in their own Complaint. *See Heldt* Amended Complaint filed Sept. 9, 2013, Doc. 30, at ¶ 61 and Ex. A, ¶ 62 and Ex. B (citing and attaching materials and an arbitration hearing transcript from Mr. Inetianbor's case); and brief filed Sept. 9, 2013, Doc. 31, Exs. C & D (attaching orders from the Mr. Inetianbor's case).

A.     **Background on Mr. Inetianbor's Case.**

4.     The Plaintiff, Abraham Inetianbor, then acting *pro se*, filed his original Complaint against CashCall, Inc. on July 12, 2012 in the Broward County Court.  (*See Inetianbor* Doc. 1-4, p. 4 of 63).  The claim alleged "defamation" because "[t]he Defendant wants me to pay 135% interest rate on a loan that is legally paid off."  (*Id*. p. 5 of 63).  Defendant removed the case on January 11, 2013 to the Southern District of Florida.  The Federal Court case, which remains pending, is styled as *Abraham Inetianbor v. CashCall, Inc., et al.*, No. 0:13-cv-60066, S.D. Fla.

5.     On January 24, 2013, Defendant moved the Court to order arbitration under the Federal Arbitration Act and the arbitration provisions in the loan agreement.  Mr. Inetianbor's loan agreement stated:  "You agree that any Dispute, except as provided below, will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement."  In fact, as Mr. Inetianbor would learn, there was no arbitration "conducted" by the Tribe, the Tribe did not have any "authorized representatives" to do arbitration, and there were no "consumer dispute rules."

6.     On January 28, 2013, Plaintiff filed an opposition to CashCall's arbitration motion.  On February 1, 2013, Plaintiff filed a notice that he would reduce his demand to settle the matter to $5,549.80 and explained the fear and fatigue caused by litigating the matter for months on end without the assistance of counsel.  He described his situation with his family including his wife's medical condition, his young daughter and his own stress.  CashCall, however, ignored Plaintiff's offer and continued to litigate.

7.     By Order dated February 15, 2013, the Court entered an Order granting Defendant's motion to compel arbitration. On March 12, 2013, Mr. Inetianbor filed a notice that

he was complying with the Court orders. Plaintiff noted that he had sought to exercise his option to have the arbitration be before three Tribal Council members, but learned from Magistrate Mona Demery of the Tribal Court that the Tribe does not conduct arbitration. He attached the letter from Magistrate Demery dated March 8, 2013.

8.      On March 12, Plaintiff filed a motion to re-open the case based on those facts. On April 1, 2013, the Court granted Plaintiff's motion. The Court noted that Plaintiff attempted to submit the case for arbitration to the Tribe; however Mediator/Magistrate Demery responded with the letter dated March 8, 2013, stating that the Tribe "does not authorize Arbitration…."

9.      On April 23, 2013, Defendant renewed its motion to compel arbitration. It argued that "CashCall has submitted the appropriate Demand for Arbitration to a Tribal Elder of the Cheyenne River Sioux Tribal Nation." It was not until later in the proceedings that the misleading nature of these statements was revealed.

10.     On April 29, 2013, Plaintiff filed his brief opposing this renewed demand to arbitrate. On May 9, CashCall filed its reply and presented the arbitration as a *fait accompli* that was already taking place: "CashCall's arbitration demand has been accepted and the arbitration is in process." Defendant attached a purported letter from the arbitrator, Mr. Chasing Hawk, purporting to state that he agreed to be the arbitrator and had "no preexisting relationship with either party in this case." Plaintiff later discovered that this letter was secretly written for the supposedly impartial arbitrator by Western Sky and CashCall's in-house counsel. Plaintiff also discovered that Mr. Chasing Hawk's daughter is a loan officer for Western Sky.

11.     On May 17, 2013 the Florida Federal Court filed its Order granting Defendant's new motion to compel arbitration. The Court relied on the letter from Mr. Chasing Hawk:

"Tribal Elder Robert Chasing Hawk, Sr., has agreed to arbitrate the case and is in the process of scheduling a hearing on preliminary matters…." Order, p. 5.

12.     On May 21, still acting *pro se* without the help of counsel, Mr. Inetianbor filed motions to reconsider and to re-open the case calling the Court's attention to evidence that Mr. Chasing Hawk's daughter worked for the enterprise. On June 6, 2013, Defendant its opposition, asserting that the daughter's employment simply made no difference. On June 10, Plaintiff filed reply briefs calling to the Court's attention the fact that Western Sky had ghostwritten Mr. Chasing Hawk's letter. Plaintiff attached documentary evidence proving someone at Western Sky-associated entity "Lakota Cash" had emailed the letter to Mr. Chasing Hawk on May 3, 2013 with instructions that he send it to the Plaintiff. On June 20, 2013, the Court filed its Order denying the Plaintiff's motion that it reconsider its Order requiring arbitration. The Court concluded that Plaintiff essentially argued the arbitrator was biased, which was premature since it should be raised on a motion to vacate an arbitration award once it was entered.

13.     Mr. Inetianbor secured the assistance of counsel and on July 16, 2013, moved for reconsideration of the Order compelling arbitration due to facts that came to light and made plain that the arbitration process was a sham. In fact, the purported Tribal arbitration process set forth did not exist, and there were actually no Tribal consumer dispute rules. Based on this evidence, the Florida Federal Court struck down the arbitration agreement and allowed the case to proceed in Court. *Inetianbor v. Cashcall, Inc.*, 962 F. Supp. 2d 1303 (S.D. Fla., 2013). This ruling was affirmed by the Eleventh Circuit and concurring, Judge Restani noted the unconscionable nature of the agreement. *Inetianbor v. Cashcall, Inc.*, 768 F.3d 1346 (11th Cir. 2014), *petition for certiorari denied* on April 6, 2015 (U.S. S. Ct.).

14. The case has now proceeded further in the Southern District of Florida. Mr. Inetianbor amended to add a putative statewide class claim for violation of Florida law, contending the loans are void and deceptive. See Fourth Amended Complaint, Doc. 141, filed on June 30, 2015, ¶ 157: "Plaintiff in addition to bringing his individual claims, hereby also brings a class action claim on behalf of himself and all others similarly situated under the provisions of Rule 23 of the Federal Rules of Civil Procedure and request certification of the following class: All persons who borrowed money in a Western Sky loan in Florida." Pending currently before the Florida District Judge are briefs on the issue of whether private civil litigants such as Mr. Inetianbor are bound by the loan agreement's Tribal choice-of-law clause, or whether the clause does not apply and Florida law applies. *See Inetianbor*, Docs. 151-57.

**B.** **Florida Attorney General Proceedings.**

15. The Florida Attorney General has brought its own case alleging the loans were usurious and violated Florida law. On or about December 23, 2013, the Florida Attorney General and Office of Financial Regulation filed a civil action seeking injunctive relief along with restitution and civil penalties. *Office of the Attorney General, State of Florida et al. v. Western Sky Financial, LLC, et al.*, No. 13-CA-15462, In the Circuit Court of the Thirteenth Judicial District, Hillsborough County, Florida.

16. The Attorney General alleged that Western Sky Financial, CashCall, and related Defendants charged interest rates ranging from 95 to 169% and annual percentage rates from 139.13 to 331.38% to more than 6,000 Florida borrowers. The interest rates far exceeded what was allowed under Florida law. The lawsuit asked the court to cancel the illegal loans, order refunds for consumers, and ban the Defendants from collecting on the loans.

17.    The trial court entered a preliminary injunction in favor of the State on July 16,

2014.  The appellate court reversed stating there was an issue to be resolved regarding whether

Florida or Tribal law controlled.  See Order dated July 31, 2015, No. 2D14-3634, Florida Second

District Court of Appeals.  The Florida Attorney General matter is currently pending before the

Florida trial court with regard to the issues remanded by the Florida Court of Appeals.

### C.    Concerns and Objections Mr. Inetianbor Has Regarding the Settlement.

18.    The concerns and objections that Mr. Inetianbor and his counsel have about the

proposed settlement are numerous.  Among other things:

19.    ***National Scope.***  Under Rule 23, the scope of the national class which is sought to

be certified fails to meet the legal requirements.  The *Heldt* Plaintiffs do not adequately

represent borrowers outside of their own three States.   An overly broad class cannot be certified.

Here, a class including residents of any states besides Texas, Virginia, and Minnesota is

overbroad and cannot be certified.[1]

20.    Rule 23(a)(2) requires a showing that there are questions of law or fact common

to the class. Here, the question for a Florida resident, of whether the Western Sky loan violated

---

[1] Rule 23(e) states that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The words "of a certified class" clearly reflect that as a threshold matter, a class must be properly certified.  A class that is sought to be certified for settlement purposes only still must meet the requirements of Rule 23.  *Amchem Products v. Windsor,* 521 U.S. 591 (1997).  The class certification requirements "focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives. That dominant concern persists when settlement, rather than trial, is proposed." 521 U.S. at 621.  A settlement class must meet the requirements for class certification just like any other class.  *See Figueroa v. Sharper Image Corp.,* 517 F. Supp. 2d 1292, 1318-19 (S.D. Fla. 2007): "Regardless of whether a class is certified for settlement or for trial, the Court must find these prerequisites are met: '(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.' Fed.R.Civ.P. 23(a)."

Florida usury law, simply is not common to the question for a Minnesota borrower. Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class. Again, this is not the case. The rights and obligations of a Minnesota borrower are not typical of those of class members in Florida.

21. The *Heldt* settlement proposal seeks to certify a national class. However, the named Plaintiffs and proposed class representatives only embrace three States – Minnesota, Virginia and Texas.[2] Those class representatives do not have standing or adequacy to be the class representatives for any other states for which certification of a settlement class is sought.

22. The *Heldt* Complaint does not state any colorable claims that would embrace the class members in the other states. The Complaint focuses on substantive liability claims specific to Minnesota, Virginia and Texas. The Complaint fails to allege any usury claims under the laws of other states where borrowers lived such as Florida.[3]

---

[2] The *Heldt* Complaint filed July 11, 2013 and amended September 9, 2013 has as its Plaintiffs Chad Heldt, Christi Jones, Sonja Curtis and Cheryl Martin. Mr. Heldt received his loan in Minnesota (*Heldt* Amended Complaint ¶ 7); Ms. Jones in Texas (*Id*. ¶ 8); Ms. Curtis in Texas (*Id*. ¶ 9); and Ms. Martin in Virginia (*Id*. ¶ 10).

[3] The Complaint includes a Count 1 for civil conspiracy which purports to extend nationally. *Heldt* Amended Complaint ¶¶ 63-66. However, civil conspiracy is not a separate cause of action, but instead merely a means of seeking joint and several liability. *E.g*., *Applied Equipment Corp*. *v*. *Litton Saudi Arabia, Ltd*., 7 Cal. 4th 503, 510-13 (1994); *Gettings v*. *Farr*, 41 S.W.3d 539 (Mo. Ct. App. 2001). The Amended Complaint lists as common issues, "whether Defendants made and collected loans that violated Minnesota, Texas, or Virginia usury laws…." *Heldt* Amended Complaint ¶ 46. Count III and IV are limited to a Minnesota class, Count V to Virginia, and Count VI to Texas.

23.     The sole basis for a national claim on the merits is Count II which alleges the

"California Constitution, Article 15."  Amended Complaint ¶ 78.  However, for a borrower in

Florida, the place of contracting would not be California, and Florida law would apply.[4]

24.     ***Settlement Imposes a Liability, Not a Benefit.***  In reviewing a motion for

preliminary approval, a settlement must be within the range of reasonableness and not have

obvious defects.   Courts including in the Eighth Circuit have not hesitated to deny motions for

preliminary approval of a settlement as well as for final approval when the class requirements are

not met, the settlement is not fair and reasonable, or it has obvious defects.[5]

---

[4] Further this allegation is inconsistent with other allegations in which the various Plaintiffs seek relief under their respective states' usury laws.  *See* Complaint ¶ 79 ("Plaintiffs Jones and Curtis, on behalf of themselves and Texas sub-class members, seek recovery of twice the amount of interest contracted for, charged, or received; their attorneys' fees and costs, as provided by the Texas Finance Code § 349.001."); Complaint ¶ 80 ("Plaintiff Heldt on behalf of himself and the Minnesota sub-class, seeks to recover all interest paid to Defendants plus costs, together with any other relief to which he or members of the class are entitled or the court may deem appropriate."); Complaint ¶ 81 ("Plaintiff Martin on behalf of herself and the Virginia sub-class, seeks to recover twice the usurious interest paid to Defendants plus costs and reasonable attorney fees, together with any other relief to which she or members of the class are entitled or the court may deem appropriate.").

[5] *E.g., Martin v. Cargill, Inc.*, No. 13-2563 (RHK/JJG) (D. Minn., Oct. 29, 2013) (denying motion for preliminary approval of proposed national class settlement).  Many courts have rejected settlement classes where they did not meet the requirements.  *See Figueroa v. Sharper Image Corp.*, 517 F.Supp.2d 1292, 1318-19 (S.D. Fla. 2007) (rejecting motion for class settlement); *Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) (same); *Ortiz v. Fibreboard Corporation*, 527 U.S. 815 (1999) (noting *inter alia* how as to "the fairness of the distribution of the fund among class members, the settlement certification is likewise deficient"); *In re American Int'l Group, Inc. Securities Litig.*, 689 F.3d 229 (2nd Cir. 2012) (vacating the district court's certification of a settlement class).  This includes denial of motions not just for final approval but also, for preliminary approval.  *See Cordy v. USS-Posco Indus.*, 12-CV-00553-JST, 2013 WL 4028627, at *4 (N.D. Cal. Aug. 1, 2013) (denying preliminary approval); *Fraley v. Facebook, Inc.*, No. C 11-1726 RS, 2012 WL 5838198, at *2-3 (N.D. Cal. Aug. 17, 2012); *In re Zoran Corp. Derivative Litig.*, No. C 06-05503 WHA, 2008 WL 941897, at *5-11 (N.D. Cal. Apr. 7, 2008) (denying motion for preliminary approval); *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F.Supp.2d 708, 714-15 (E.D. Pa. 2014) (denying preliminary approval because of concerns that the settlement was insufficient and "in light of my duty to protect the rights of all potential class members"); *In re: High-Tech Employee Antitrust Litig.*,

8

25. Here, the settlement provides a phantom benefit to class members who have void loans under their states' laws but who would be deemed liable on new loans at 18% interest. In fact, it is the opposite of a benefit: it is punitive of those class members. *Compare Zimmerman v. Zwicker & Associates, P.C.*, CIV. 09-3905 RMB, 2011 WL 65912, at *3 (D.N.J. Jan. 10, 2011) (denying preliminary approval of class action settlement because "there is a phantom benefit to the class but yet the class is required to release their FDCPA claims").

26. The primary remedy sought by the settlement in terms of the number of likely class members affected, is the reformation of the loans so they are 18% interest loans. This is a form of injunctive relief, yet, the Parties have not sought to meet the requirements of Rule 23(b)(2) regarding settlement of injunctive relief classes. The number of class members who have paid back the full loan principal plus interest above 18% will be only a fraction of the total class. Most class members would get no monetary benefit while at the same time, they would be subjected to new loan provisions – generating new 18% interest loans out of thin air, where in States like Florida they are unenforceable. *Harris v. Gonzalez,* 789 So.2d 405, 409 (Fla. Ct. App. 2001) ("A contract which violates a provision of the constitution or a statute is void and illegal and will not be enforced in our courts.").

27. The Court should deny the motion for preliminary approval and certification of the class as framed. Otherwise, hundreds of thousands of defective class notices will be sent out sowing confusion. *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 236 F.R.D. 53, 55-56 (D. Me. 2006) ("Before incurring the expense of widescale notice, it makes sense for a judge to say that a particular settlement has no chance of approval.").

---

No.: 11-CV-02509-LHK, 2014 U.S. Dist. LEXIS 110064 (N.D. Cal. Aug. 8, 2014) (denying a motion for preliminary approval).

28.     Here, class members in states with less protective usury laws receive more of a benefit while those in states with greater usury protection receive less.  Further, a class member from Florida who is subject to a court-approved settlement that fixes him with a binding loan at 18% interest is worse off than with no settlement at all, because as it stands, at least he has the protection of basic Florida usury law that says the loan is void.  The differences in State law reflect how the settlement cannot meet the adequacy, typicality and predominance requirements under Rule 23.

29.     ***Lack of Transparency and Provisions to Ensure Fairness.***  CashCall has a well-documented record of misrepresentations and material omissions.  For example, in a June 4, 2014 filing, the California State Commissioner of Business Oversight alleged how CashCall had misrepresented its status and failed to disclose penalties and orders against it in Kansas, Connecticut, West Virginia, Alaska, Georgia, Florida, New York and Maryland.  *See Commissioner of Business Oversight, State of California v. CashCall, Inc.*, No. 603-8780, Accusation dated June 4, 2014, at ¶¶ 15-18.

30.     As another example, in Mr. Inetianbor's matter, as noted above, the District Court at first ordered arbitration based on representations that a valid Tribal arbitration system existed. It soon became apparent that no such system existed.  The District Court subsequently reversed itself and voided the arbitration clause.

31.     The proposed settlement is lacks adequate provisions to ensure that the details of the settlement are honestly and properly performed and audited and conducted in a transparent manner and is implemented properly.

32.     Further, the settlement presumably if approved would let CashCall and its cohorts renew collection efforts on the resurrected 18% loans.  This would be egregious, given the company's track record of abusive collection practices.

33.     Western Sky Financial, LLC and related entities controlled by Martin Webb also have a history of deceptive practices and representations.  As this Court is aware, Western Sky-related entities engaged in a deceptive practice of purporting to garnish borrowers' wages using papers that in fact had no legal basis.  This led to a Federal Trade Commission lawsuit.  *See FTC v. Payday Fin., LLC*, No. 3:11-cv-03017-RAL, 2013 WL 1309437 (D.S.D. March 28, 2013).

34.     In light of this past history regarding CashCall and Western Sky, any purported settlement affecting thousands of borrowers must include specific, detailed and exhaustive provisions that are open and transparent and ensure fairness.   However, to the contrary of being open, the proposed settlement has secret terms.  It states that if too many people opt out, the Defendant can terminate the settlement, as a secret bargain.  *See* Doc. 64-3, § 8.3(d):  "The agreement concerning the Opt-Out Limit will be contained in a confidential side letter to this Settlement and will be available for *in camera* inspection by the District Court.  The Parties agree to maintain the Opt-Out Limit and the confidential side letter concerning the Opt-Out Limit in strict confidence, except as necessary for *in camera* review by the District Court and/or otherwise agreed or ordered by the District Court."  These terms violate the precept that a class action settlement must be public.  *See* NACA Consumer Class Action Guidelines, Third Edition, 2014, GUIDELINE 10 – CONFIDENTIALITY ("Class action settlement documents must remain open and available to the public in virtually all circumstances, including precertification.").

35.     ***"Claims Made" Provisions.***  It is clear from the settlement submission that the Defendants already know which borrowers have paid what amounts back on the loans.  In light of this fact, it makes no sense to require class members to engage in the cumbersome process of sending in claim forms, prior to payout.  These borrowers are low-income and underprivileged. Many may not understand the notice or claim procedure or know to send in a claim form.  There is no need to require the claims.  Since the Defendants already know which borrowers have paid what amount on the loans, Defendants should be able to readily identify all borrowers entitled to the monetary payment and be able to send them a check.

36.     The settlement agreement defines  "Residual Balance Loan" as any loan to a Settlement Class Member for which total payments exceed what would have been due had such loan been originated at an 18% interest rate.  Doc. 64-3, § 2.30.  The agreement says that different forms of notice will go to people in or out of the group.  Doc. 64-3, § 5.3(a).  Clearly the Parties know which borrowers go in which group of they mean to send mailings to different groups.  Thus there is no need for a claims process.

37.     There are many other concerns and objections that Mr. Inetianbor and the undersigned have with the proposed settlement.  However they have not had adequate time to review the settlement fully nor have they been provided with information that would allow a better analysis.  Accordingly, Mr. Inetianbor and his counsel respectfully ask that the Court delay the preliminary approval hearing if the Court is unwilling to reject it outright at this time.

38.     In further support of this submission, the Declaration of Mr. Inetianbor is provided herewith.

Respectfully submitted, this the 18th day of November, 2015.

<u>s/Janet Varnell</u>
Janet Varnell, Esq.
Florida Bar No. 0071072
Varnell and Warwick, P.A.
20 La Grande Boulevard
The Villages, FL 32159
Telephone: 352-753-8600
Fax: 352-753-8606525
jvarnell@varnellandwarwick.com

Mona L. Wallace (N.C. Bar No. 09021)
John S. Hughes (N.C. Bar No. 22126)
WALLACE & GRAHAM, P.A.
525 N. Main St.
Salisbury, NC 28144
704-633-5244 Telephone
mwallace@wallacegraham.com
jhughes@wallacegraham.com

*Attorneys for Plaintiff*

# DECLARATION OF ABRAHAM INETIANBOR

I, Abraham Inetianbor, pursuant to 28 U.S.C. § 1746 hereby declare under penalty of perjury the following is true and correct:

1.    My name is Abraham Inetianbor. I am over twenty-one years of age and am fully competent to make the statements contained herein. I am the Plaintiff in the case of *Inetianbor v. CashCall* that was brought in Florida Federal Court and is still ongoing.

2.    I have brought my lawsuit on behalf of myself, and on behalf of other Florida residents who borrowed money from the Western Sky lending enterprise. Under Florida law, these loans are unlawful.

3.    My lawsuit describes how prior to terminating the "Western Sky" loan enterprise in Florida, CashCall and its owner, Reddam, controlled an enterprise to make and collect on unlawful loans and to avoid liability for doing so. CashCall and Reddam earned millions of dollars from this enterprise.

4.    My lawsuit seeks to recover all amounts collected by CashCall and for damages, attorneys' fees, and such other relief as allowed by law. I also seek declaratory and injunctive relief including a declaration that the loans are void, for refunds, and for correction of all affected credit reports of class members.

5.    To protect itself from lawsuits, CashCall declared that their loan business was protected from the application of any State or Federal law under tribal immunity for the Cheyenne River Sioux Tribe. However, the Tribe did not own the lending enterprise, and Western Sky did not make loans to tribal members because the loans were illegal under tribal law as well. Accordingly, the enterprise is not protected by tribal immunity.

1

6.     In fact, the entire Western Sky enterprise was actually just a "front" for the Defendants, CashCall, a private California corporation with no Tribal connection, and Reddam as its president and owner. The vast majority of the revenues from the enterprise did not go to benefit any Tribal members but rather to line the pockets of Reddam and CashCall.

7.     Unlike other Western Sky loan victims, I actually sought to proceed with the individual arbitration process required by my loan contract, when that was ordered by the Court. In this effort, I uncovered evidence of a fraudulent arbitration scheme.

8.     In fact, I discovered that the company selected an arbitrator, Robert Chasing Hawk, whose own daughter worked for the enterprise. To this day CashCall refuses to say what he was paid.

9.     In light of these facts, the entire Western Sky loan agreement is a sham and an illusion. Western Sky was nothing more than a front to enable CashCall to shield its deceptive business practices from being sued.

10.     I am a citizen and resident of Broward County, Florida. I reside with my wife and we have a young daughter.

11.     In the December 2010/January 2011 time period, we were in financial hardship. I saw an ad for "Western Sky" on the television. The TV ad deceptively represented that these were valid and proper loans and because I was in a state of hardship, I called the phone number.

12.     My loan agreement is dated January 5, 2011. Under that agreement, Western Sky loaned a net amount of $2,525.

13.     Over time, I paid back approximately $3,252, more than I received.

14.     I was told soon after I got the loan that the loan was now with CashCall.  I made all my loan payments to CashCall.  I never made a payment to Western Sky.  In fact, Western Sky was simply operating as a "front" for CashCall, all along.

15.     Eventually I learned that this loan was unlawful under Florida law and the interest rate was far above the limit allowed by law.  When I complained, CashCall continued trying to collect on the loan.

16.     CashCall acted with cruelty and arrogance in its collection efforts and caused my family to suffer great stress and suffering as well as monetary loss.

17.     The history of my claim in arbitration further reflects how the loan agreement and all of its provisions are false and fraudulent.

18.     After the Court initially ordered arbitration, Defendants acting on their own arranged for Mr. Robert Chasing Hawk to be the arbitrator.

19.     I never agreed with CashCall for Mr. Chasing Hawk to be the arbitrator in my dispute.  CashCall picked him on its own.

20.     Mr. Chasing Hawk had never before arbitrated a consumer dispute, and he was not licensed or qualified as an arbitrator.

21.     I asked CashCall what they were paying Mr. Chasing Hawk to be the arbitrator.  CashCall said it was none of my business.  CashCall would not send me a copy of any contract with Mr. Chasing Hawk or records of what they were paying.  To this day, such information has not been produced.

22.     I found out through my own research that Mr. Chasing Hawk's daughter worked for the enterprise. Mr. Chasing Hawk had said in a May 1, 2013 letter that he had no prior

connection to any of the parties. This statement was inaccurate – first, because his daughter worked for the lender, and second, because the company actually wrote the letter he sent.

23. The May 1 letter was "ghostwritten" for the arbitrator to pretend was his own. Mr. Chasing Hawk emailed me the letter on Friday May 3, 2013. But when I clicked to open the letter, it was not signed. It was simply a Microsoft Word document. That's when I noticed that in the email, Mr. Chasing Hawk was actually forwarding another email that someone at a Lakota Cash email address had sent to Mr. Chasing Hawk.

24. The email to Mr. Chasing Hawk was sent from a Lakota Cash "HR" (human resources) email address. Making matters worse, the email was copied on the Bogue law firm, which had filed corporation papers for Webb's companies and responded to consumer complaints in the past, and to Dan Baren who was the in-house counsel for CashCall.

25. So when Mr. Chasing Hawk said in his letter that he had "no preexisting relationship with either party," this was false as he was signing a letter written for him by Defendants' enterprise.

26. This entire dispute started with my *pro se* lawsuit against CashCall merely alleging false information on my credit report. However, the demand CashCall sent to the arbitrator claimed that I still owed more money. CashCall was still trying to collect money that the Florida law says that I do not owe.

27. The amount of money the company loaned came to $2,525.00 (loan amount of $2,600 minus "fee" of $75). By December 2011, I had paid back $3,252.65. Thus I had paid back significantly more than I borrowed yet CashCall sought to pervert the arbitration process to claim a right to even more money. And they knew I lacked a lawyer at that time.

28.     The "preliminary hearing" in the arbitration occurred by telephone on Friday, June 21, 2013. It was tape-recorded.

29.     In the hearing, Mr. Chasing Hawk admitted that his daughter worked "giving out the loans." He also admitted that the owner (Martin Webb) came to him a few months before, without my involvement, asking Mr. Chasing Hawk to be the arbitrator.

30.     In the hearing, I expressed concern that the parties should not be making rules as they go along, and asked for clarification. Mr. Chasing Hawk finally said "I think both parties would compromise you don't have to really follow rules and regulations that's why I mentioned it's going to be informal and we'll agree we don't have to follow this and that because if we follow all the rules and regulations we're going to be jammed up here." I did not agree to this. Mr. Chasing Hawk also said "there's no set rules." In other words, the loan agreement saying arbitration would be under the Tribe's "consumer dispute rules" was false.

31.     Due to Defendants' misconduct and deceptive practices, I was put in the middle of a completely unfair arbitration proceeding, at great stress to myself proceeding *pro se*.

32.     My lawsuit alleges that the loans violate the Florida usury statute. Each loan was a "usurious contract." The Florida Attorney General has stated that consumer loans of this nature violate the law. My lawsuit includes several other claims and a class action claim.

33.     As is evident from my loan agreement, the interest rate CashCall charged was over 139%. Compared to the 18% interest rate limit under Florida law, this interest rate was over seven times greater than what the law allowed.

34.     When I refused to make further payments, CashCall wrote to the Florida Office of Financial Regulations still demanding more money: "due to Abraham Inetianbor's good payment

history Cash Call would accept a onetime cash payment of $2,000.00" in addition to the payments I already made. But because the loan is criminal, CashCall is entitled to nothing.

35. I was a victim of usury by CashCall who is required to abide by the usury laws of Florida when conducting business in the state of Florida.

36. I have learned that the company is trying to make a settlement in South Dakota. I ask for the Court's permission to intervene in this South Dakota case so that I can protect my rights and those of others in Florida. I believe the proposed settlement should not include anyone in Florida.

37. My understanding is that the proposed settlement would not declare that all of the Western Sky loans are illegal and void and unenforceable. I believe they plainly are in my State. I oppose a settlement that would keep the loans somehow legal.

38. CashCall was a company that used a deceptive scheme to make loans at interest rates so high they broke the law of criminal usury statutes. Now that they have been caught, they just want to reduce their interest rate to 18% and still get paid on the loans. This is not fair.

39. I also have been in touch with other victims of the loan scheme over the years. My case was one of the earliest ones, and it has been in the headlines several times because of the issues in the case and the developments in the case.

40. I will let the Plaintiffs in the South Dakota case speak for themselves, but I have reason to believe they have not been treated fairly and that they do not all agree to "their" settlement.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

EXECUTED this 18 day of November, 2015 in Broward County, Florida.

Signed: _____

Abraham Inetianbor

<u>STATEMENT OF INTEREST BY ILLINOIS PLAINTIFFS</u>

1.      This statement is submitted on behalf of objector James Binkowski, one of the three plaintiffs in the Illinois case, *Jackson v. Payday Financial, LLC*, which was filed in October, 2011 against Martin A. Webb, Payday Financial LLC, Western Sky Financial LLC, Great Sky Finance LLC, Red Stone Financial LLC, Management Systems LLC, 24-7 Cash Direct LLC, Red River Ventures LLC, High Country Ventures LLC, Financial Solutions LLC and CashCall, Inc.

2.      The *Jackson* case alleges that the defendants violated the Illinois Interest Act (815 ILCS 205/.01 *et seq.*), the Illinois criminal usury statute (720 ILCS 5/39-1 (2010), now codified as 720 ILCS 17/59 (2011)), and the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.*) ("Consumer Fraud Act").  The Jackson complaint also sought injunctive relief as to the enforceability of the Western Sky "tribal arbitration" clause.

3.      The proposed class definitions in the Jackson case are as follows:

**CLASS A:**  This class – which has claims under the Interest Act – includes all individuals with Illinois addresses (at the time the loan was made), to whom any of the Webb entities made or from whom they collected a loan at more than 9% interest, at any time on or after October 9, 2009.  The subclass consists of all class members with respect to whom CashCall either owns, or services, or has attempted to collect money on, a debt allegedly originated by any of the Webb entities.

**CLASS B:**   This class – which has claims under Illinois's criminal usury statute – includes  all individuals with Illinois addresses (at the time the loan was made), to whom any of the Webb entities made or from whom they collected a loan, at more than 20% interest, at any time on or after October 9, 2009.  The subclass consists of all class members with respect to whom CashCall either owns, or services, or has attempted to collect money on, a debt allegedly originated by any of the Webb entities.

**CLASS C:**   This class – which has claims under the Consumer Fraud Act – includes all individuals with Illinois addresses (at the time the loan was made), to whom any of the Webb entities made or from whom they collected a loan, at more than 9% interest, at any time on or after October 9, 2008.  The subclass consists of all class members with respect to whom CashCall either owns, or services, or has attempted to collect money on, a debt allegedly originated by any of the Webb entities.

**CLASS D:**   This class – which seeks declaratory relief relating to any purported arbitration clause – includes of all individuals with Illinois addresses (at the time the loan was made), to whom any of the Webb entities made or from whom they collected a loan, that provides for arbitration before one or more arbitrators who must be  Native Americans.  The subclass consists of all class members with respect to whom CashCall either owns, or services, or has attempted to collect money on, a debt allegedly originated by any of the Webb entities.

4.      The issue of the enforceability of the tribal arbitration clause has been decided in

the Jackson plaintiffs' favor by the Seventh Circuit, and the United States Supreme Court has denied certiorari. *Jackson v. Payday Financial*, 764 F.3d 765 (7th Cir. 2014), cert denied, 135 S.Ct. 1894 (Apr. 27, 2015). The Seventh Circuit found the tribal arbitration clause to be illusory and unenforceable, and also found that tribal courts did not have subject matter jurisdiction over plaintiffs' claims and that exhaustion in tribal courts was not required because they had no jurisdiction over plaintiff' claims.

5.     Since that time, the District Court has denied defendants' motion to dismiss on the merits, finding that plaintiffs stated a claim under the Illinois Interest Act and the Illinois Consumer Fraud Act. *Jackson v. Payday Financial,* 79 F.Supp.3d 779 (N.D.Ill. Feb. 3, 2015). In so doing, the court rejected defendants' argument that Illinois law did not apply to plaintiffs and the class members' loans, and rejected defendants' Dormant Commerce Clause argument.

6.     The Court then set a November 17, 2015 discovery cut-off date. The parties were well on their way to completing discovery by, or shortly after this date, when defendants' counsel informed plaintiffs' counsel that they could not take or defend any depositions until December. Counsel learned of the *Heldt* settlement shortly thereafter, and have since filed a motion to extend the discovery cut-off date by sixty days, which was granted.

7.     The proposed loan modification in the *Heldt* settlement, provides for an interest rate that is double the allowed rate for defendants' loans in Illinois. Illinois allows an unlicensed lender to make loans to an individual at a rate not in excess of 9%. 815 ILCS 205/4. An unlicensed lender who makes such loans at more than 20%, as did defendants, commits a Class 4 felony. 720 ILCS 5/17-59.

8.     In order to charge a greater rate, the lender must have a banking or financial institutions charter or a license under the Consumer Installment Loan Act, 205 ILCS 670/1 et seq. ("CILA"), or the Payday Loan Reform Act, 815 ILCS 122/1-1 *et seq*. ("PLRA"), from the Illinois Department of Financial and Professional Regulation. All of these charters and licenses subject the holder to examination and regulation by state or federal regulators. Defendants had no such charter or license and were not subject to examination or regulation. In fact, The Illinois Department of Financial and Professional Regulation issued a Cease and Desist Order against

Western Sky Financial, LLC in March, 2013.

9.     CILA, 205 ILCS 670/1 provides:

670/1. License required to engage in business

§ 1. License required to engage in business. No person, partnership, association, limited liability company, or corporation shall engage in the business of making loans of money in a principal amount not exceeding $40,000, and charge, contract for, or receive on any such loan a greater rate of interest, discount, or consideration therefor than the lender would be permitted by law to charge if he were not a licensee hereunder, except as authorized by this Act after first obtaining a license from the Director of Financial Institutions (hereinafter called the Director). No licensee, or employee or affiliate thereof, that is licensed under the Payday Loan Reform Act shall obtain a license under this Act except that a licensee under the Payday Loan Reform Act may obtain a license under this Act for the exclusive purpose and use of making title-secured loans, as defined in subsection (a) of Section 15 of this Act and governed by Title 38, Section 110.300 of the Illinois Administrative Code. For the purpose of this Section, "affiliate" means any person or entity that directly or indirectly controls, is controlled by, or shares control with another person or entity. A person or entity has control over another if the person or entity has an ownership interest of 25% or more in the other.

10.     Under CILA, 205 ILCS 670/20, "(a) Any person who engages in business as a Consumer Installment Loan lender without the license required by this Act shall be guilty of a Class 4 felony", and " if any person who does not have a license issued under this Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."  Similarly, the PLRA provides,  815 ILCS 5/4-10(h), that "if a lender who does not have a license issued under this Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."

11.     These provisions were added in 2013 but codify prior law.  Under *Chatham Foot Specialists PC v. Health Care Serv. Corp.*, 216 Ill.2d 366, 381; 837 N.E.2d 48, 57 (2005), "courts will not enforce a contract involving a party who does not have a license called for by legislation that expressly prohibits the carrying on of the particular activity without a license where the legislation was enacted for the protection of the public, not as a revenue measure." *In re C&S Grain*, 47 F.3d 233, 237 (7th Cir. 1995), held that "in Illinois, once a statute imposes licensure as a precondition for operation and provides a penalty for its violation, a contract for the unlicensed performance of that act is void."

12.     Furthermore, the Interest Act, 815 ILCS 205/6, provides for substantial statutory damages, as follows:

> If any person or corporation knowingly contracts for or receives, directly or indirectly, by any device, subterfuge or other means, unlawful interest, discount or charges for or in connection with any loan of money, the obligor may, recover by means of an action or defense an amount equal to twice the total of all interest, discount and charges determined by the loan contract or paid by the obligor, whichever is greater, plus such reasonable attorney's fees and court costs as may be assessed by a court against the lender. The payments due and to become due including all interest, discount and charges included therein under the terms of the loan contract, shall be reduced by the amount which the obligor is thus entitled to recover. Recovery by means of a defense may be had at any time after the loan is transacted. Recovery by means of an action may be had at any time after the loan is transacted and prior to the expiration of 2 years after the earlier of (1) the date of the last scheduled payment of the loan after giving effect to all renewals or extensions thereof, if any, or (2) the date on which the total amount due under the terms of the loan contract is fully paid. . . .

As noted, the interest to be doubled is all of the interest provided for under the loan contract, not just that paid by the obligor.

13.     These protections are not waivable.  The protections of the Payday Loan Reform Act cannot be waived; 815 ILCS 122/4-40 provides that "there shall be no waiver of any provision of this act."  Further, 815 ILCS 122/1-15(b) provides that "he provisions of this Act apply to any person or entity that seeks to evade its applicability by any device, subterfuge, or pretense whatsoever."  Likewise, the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("CFA"), under which plaintiffs have asserted claims, provides that "any waiver or modification of the rights, provisions, or remedies of this Act shall be void and unenforceable."  815 ILCS 505/10c.

14.     Choice of law provisions are treated as waivers under Illinois law.  *Flynn Beverage Inc. v. Joseph E. Seagram & Sons Inc.*, 815 F.Supp. 1174, 1178 (C.D.Ill. 1993); *Korean American Broadcasting Co. v. Korean Broadcasting Systems*, 2012 WL 1080260, *2 (N.D.Ill. Mar. 29, 2012); *Franklin's Systems Inc. v. Infanti*, 883 F.Supp. 246, 250-251 (N.D.Ill. 1995); *Wright-Moore Corp. v. Ricoh Corp.*, 908 F.2d 128 (7th Cir. 1990); *Bixby's Food Systems, Inc. v. McKay*, 193 F.Supp.2d 1053, 1060 (N.D.Ill. 2002).

15.     The Illinois Department of Financial and Professional Regulation ("IDFPR") has repeatedly taken action against out-of-state payday lenders, including tribal lenders, and

including Western Sky. The IDFPR's authority is limited to issuing cease and desist orders. These include *In re Money Mutual LLC*, No. 12 CC 408 (IDFPR Sept. 21, 2012) (Exhibit B), (1) *In re Mountain Top Services I LLC*, No. 12 CC 423 (IDFPR Oct. 5, 2012) (Exhibit C) (Nevada lender), (2) *In re Kenwood Services LLC*, No. 12 CC 445 (IDFPR Oct. 5, 2012) (Delaware lender), (3) *In re Integrity Advance LLC*, No. 12 CC 444 (IDFPR Oct. 5, 2012) (Exhibit E) (Delaware lender) (4) *In re VIP Loan Shop*, No. 12 CC 573 (IDFPR Dec. 5, 2012) (Exhibit F) (Kansas lender); (5) *In re Red Leaf Ventures LLC*, No. 12 CC 569 (IDFPR Dec. 5, 2012) (Exhibit G) (Kansas lender); (6) *In re Fireside Cash*, No. 12 CC 567 (IDFPR Dec. 10, 2012) (Exhibit H) (Kansas lender); (7) *In re Western Sky Financial LLC*, No. 13 CC 265 (IDFPR March 8, 2013) (Exhibit I) (South Dakota lender, claiming jurisdiction of Cheyenne River Sioux Tribe), and (8) *In re Hydrafund.org,* No. 13 CC 339 (IDFPR May 3, 2013 (Exhibit J) (Nevada lender).

16.     According to information obtained in discovery in the Jacskon case, there are 3025 Illinois residents who took out loans between Sept. 11, 2008 and Oct 11, 2011. CashCall collected $8,066,250 on these Illinois loans. (Defendants' Responses and Objections to Plaintiffs' Interrogatory Nos. 19 and 20). The loans provided for a finance charge of two to three times the amount financed. It necessarily follows that CashCall has a liability of at least $16 million from Illinois residents, and probably much more. Given the fact that defendants' loans plainly violate Illinois law, the *Heldt* settlement is woefully inadequate for Illinois class members, and the loan modification proposed by the *Heldt* plaintiffs is illegal. As noted above, the proposed modified interest rate is double that allowed by Illinois, and the settlement itself appears to be an illegal attempt to waive the protections of Illinois law. Moreover, many Illinois class members, including James Binkowski, would not be eligible for any relief from the *Heldt* class fund, even though they have paid interest exceeding the legal limits in Illinois, and/or are entitled to significant statutory damages under Illinois law. The settlement will release all claims and defenses against the defendants without imposing any bars on defendants' ability to collect the criminally usurious loans. The proposed class notice provides no information whatsoever to Illinois class members about the fact that their loans are void and unenforceable in Illinois, and

instead will give Illinois class members the impression that they have to pay the loans at the

illegal interest rate of 18%.

<div style="margin-left: 50%;">

Respectfully submitted,

/s/ Daniel A. Edelman
Daniel A. Edelman
Counsel for James Binkowski, Deborah
Jackson and Linda Gonnella

</div>

Daniel A. Edelman
James O. Latturner
Tara L. Goodwin
EDELMAN, COMBS, LATTURNER
  & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
## CENTRAL DIVISION

| | | |
|---|---|---|
| CHAD MARTIN HELDT, CHRISTI W. JONES, SONJA CURTIS, and CHERYL A. MARTIN, individually and on behalf of all similarly situated individuals, | : : : | Case No. 3:13-cv-3023 |
| Plaintiffs, | : | Hon. Roberto Lange |
| v. | : | |
| PAYDAY FINANCIAL, LLC, d/b/a Lakota Cash and Big Sky Cash; WESTERN SKY FINANCIAL, LLC, d/b/a Western Sky Funding, Western Sky, and Westernsky.com; CASHCALL, INC.; and WS FUNDING, LLC, | : : : : | |
| Defendants. | : | |

## STATEMENT OF INTEREST OF KENTUCKY PLAINTIFF

Jeffrey Moore, plaintiff in the Kentucky litigation styled *Moore v. Cashcall, Inc., et al*, Eastern District of Kentucky at Covington, Case No. 2:15-cv-00192-WOB-JGW, ("Moore") by counsel, submits this Statement of Interest in support of the Motion to Intervene, Request for Continuance, and Objections of Plaintiffs:

1.     Moore filed his Complaint and Jury Demand ("Complaint") on November 9, 2015, seeking certification of a Kentucky–only class against Defendants CashCall, Inc., ("CashCall"), WS Funding, LLC, Delbert Service Corporation, and John Paul Reddam (collectively, "Kentucky Defendants").

2.     Each of the Kentucky Defendants is a "Released Party" under the terms of the proposed Stipulation and Agreement of Settlement ("Proposed Settlement") filed in this matter. (*See*, Doc. 64-3.)

3.    Moore alleged in the Complaint that Defendants regularly offered, made, and collected on illegal, unsecured loans to Kentucky consumers.  (Complaint, ¶1).  The Kentucky Defendants offered Kentucky consumers personal loans ranging in amounts from $850 to $10,000.  On these loans Defendants have charged Kentucky consumers interest rates from at least 89% to over 200% per annum.  (Complaint, ¶17).

4.    Moore alleges that prior to being offered a loan by the Kentucky Defendants, he saw advertisements purportedly by Western Sky for loans.  These advertisements ran on television channels; specifically, channels related to horse racing.  (Complaint, ¶64).  As a result of seeing these advertisements, Moore called the advertised number and spoke to a representative.  (Complaint, ¶65).  Moore initially sought a loan of $5,000.  The representative encouraged Moore to take a loan of $10,000 because the monthly payment, though higher, would not be proportionately higher than for a loan of $5,000.  (Complaint, ¶66).

5.    The loan made to Moore purports to charge interest of 89% per annum to borrow $10,000 to be repaid over 84 months for total payments of $62,650.94.  (Complaint, ¶69).  Moore's loan was immediately assigned to CashCall.  (Complaint, ¶70).

6.    Plaintiff made payments totaling over $9,000 to Defendants on the loan through August 2013 despite the loan being void and illegal in the Commonwealth of Kentucky.  Under Kentucky law, unlicensed lenders like the Kentucky Defendants can charge a maximum interest rate of 8%. K.R.S. 360.010.  Any loan issued by an unlicensed lender which charges in excess of 8% is void and the lender has no right to collect any principal, charges or recompense whatsoever    K.R.S. 286.4-991(1).

7.     Despite the fact that the loan is illegal and void in Kentucky, after Plaintiff was no longer able to make payments on the loan, CashCall turned over collection of the loan to Delbert.  (Complaint, ¶72).   On May 1, 2014, Delbert wrote to Plaintiff seeking to collect on the loan. In that communication, Delbert represented that the current balance of the loan was $16,842.03.  (Complaint, ¶73).

8.     The Kentucky Department of Financial Institutions has repeatedly advised the Kentucky Defendants and Western Sky Financial, LLC, that the loans made to Kentucky consumers are void and uncollectable.  (See, sample communications attached as exhibits.)

9.     The Proposed Settlement does not advise Moore or members of the Kentucky putative class that the loans may be illegal, void, and unenforceable under Kentucky law – or the laws of any other state.   Instead, the Proposed Settlement purports to legitimize the loans enable Defendants to collect a rate of interest (18%) which is also illegal in Kentucky.

10.     Moore would receive nothing from the Settlement Fund under the Proposed Settlement because even though he paid over $9,000 on a loan which is illegal and void in Kentucky, he did not pay an amount equal to the principal plus 18% interest.

11.     To learn that they do not qualify to participate in the Settlement Fund, Moore and all other class members must complete a claim form and return that to the claims administrator within the strict time frames set by the Proposed Settlement.  How much Moore and all other class members have paid are known to Defendants.  Whether, and to what extent, a class member could participate in the Settlement Fund could be printed on the notice.

12.     The Proposed Settlement is unfair and unreasonable and purports to legitimize loans which are illegal and void in the Commonwealth of Kentucky in that it seeks to bind Moore and all members of the putative Kentucky class to the collection of loans which, even as modified, violate Kentucky law.

DATED this 17th day of November, 2015.

By: /s/ Robert R. Sparks
    Robert R. Sparks (Ky. Bar #83685)
    STRAUSS TROY CO., LPA
    150 East Fourth Street
    Cincinnati, Ohio 45202
    (513) 621-2120 Telephone
    (513) 241-8259 Facsimile
    *rrsparks@strausstroy.com* Email

    and

    /s/ Matthew T. Sanning
    Matthew T. Sanning
    224 Main Street
    Augusta, Kentucky  41002
    *mattsanning@windstream.net* Email

    *Attorneys for Plaintiff(s)*

4212485_1.doc



**PUBLIC PROTECTION CABINET**
**DEPARTMENT OF FINANCIAL INSTITUTIONS**

Steven L. Beshear
Governor

1025 Capital Center Drive, Suite 200
Frankfort, KY 40601
Phone: (502) 573-3390
Fax: (502) 573-8787
www.kfi.ky.gov

Robert D. Vance
Secretary

Charles A. Vice
Commissioner

July 24, 2012

CashCall , Inc.
FAX (949) 225-4699

RE:    James Ashcraft,              Acct.

To Whom It May Concern:

To protect citizens of the Commonwealth of Kentucky, the Department of Financial Institutions is responsible for regulating and examining consumer loan company businesses and to ensure compliance with all statutory requirements. This charge can be found in Chapter 286.4 of the Kentucky Revised Statutes ("KRS"), applicable administrative regulations, and relevant interpretative authority.

Recently, it was discovered that your company, CashCall, Inc., entered into a consumer loan company transaction with a Kentucky resident. Our records show that your company is not licensed by this Department to engage in the business of providing consumer loan transactions. Therefore, your company has violated KRS 286.4-420 which states that "No person shall, without first obtaining a license from the commissioner, engage in the business of making loans in the amount or of the value of fifteen thousand ($15,000) or less at a greater rate of interest *(usury)*, or consideration therefor than otherwise permitted by law." Additionally, KRS 286.4-991(1) states, in part, that ". . . any loan contract made in violation of this subtitle shall be void and the lender shall have no right to collect any principal, charges or recompense whatsoever." Therefore, in accordance with KRS Chapter 286.4, CashCall, Inc. shall cease and desist its attempts to enforce the terms of all consumer loan company agreements entered into with Kentucky residents including, but not limited to, all efforts to collect money from Kentucky residents pursuant to said agreements. Furthermore, CashCall, Inc. shall cease and desist from entering into new consumer loan company transactions with Kentucky residents from this point forward.

Please be advised that per KRS 286.4-991(1) that, "Any person who shall engage in the business regulated by this subtitle without first securing a license therefor shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than five hundred dollars ($500) nor more than five thousand dollars ($5,000). . . ."

If you have questions or wish to discuss these matters further, please contact me at (800) 223-2579, Ext. 256.

Sincerely,

Andie Cubert

Andrea "Andie" Cubert
Consumer Protection Branch
Division of Non-Depository Financial Institutions

cc:     James Ashcraft



**PUBLIC PROTECTION CABINET**
**DEPARTMENT OF FINANCIAL INSTITUTIONS**

Steven L. Beshear
Governor

1025 Capital Center Drive, Suite 200
Frankfort, KY 40601
Phone: (502) 573-3390
Fax: (502) 573-8787
www.kfi.ky.gov

Robert D. Vance
Secretary

Charles A. Vice
Commissioner

February 7, 2013

Western Sky Financial, LLC
CashCall
P.O. Box 66007
Anaheim, CA 92816
Fax:     (949) 225-4699

RE:     Hyacinth Dezenobia,

To Whom It May Concern:

To protect citizens of the Commonwealth of Kentucky, the Department of Financial Institutions is responsible for regulating and examining consumer loan company businesses and to ensure compliance with all statutory requirements. This charge can be found in Chapter 286.4 of the Kentucky Revised Statutes ("KRS"), applicable administrative regulations, and relevant interpretative authority.

Recently, it was discovered that your company, CashCall, entered into a consumer loan company transaction with a Kentucky resident. Our records show that your company is not licensed by this Department to engage in the business of providing consumer loan transactions. Therefore, your company has violated KRS 286.4-420 which states that "No person shall, without first obtaining a license from the commissioner, engage in the business of making loans in the amount or of the value of fifteen thousand ($15,000) or less at a greater rate of interest *(usury)*, or consideration therefor than otherwise permitted by law." Additionally, KRS 286.4-991(1) states, in part, that ". . . any loan contract made in violation of this subtitle shall be void and the lender shall have no right to collect any principal, charges or recompense whatsoever." Therefore, in accordance with KRS Chapter 286.4, CashCall shall cease and desist its attempts to enforce the terms of all consumer loan company agreements entered into with Kentucky residents including, but not limited to, all efforts to collect money from Kentucky residents pursuant to said agreements. Furthermore, CashCall shall cease and desist from entering into new consumer loan company transactions with Kentucky residents from this point forward.

CashCall
February 7, 2013
Page Two

Please be advised that per KRS 286.4-991(1) that, "Any person who shall engage in the business regulated by this subtitle without first securing a license therefor shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than five hundred dollars ($500) nor more than five thousand dollars ($5,000). . . ."

If you have questions or wish to discuss these matters further, please contact me at (800) 223-2579, Ext. 256.

Sincerely,

Andrew Calvert
Consumer Protection Branch
Division of Non-Depository Financial Institutions

cc:     Hyacinth Dezenobia,
        custserv@cashcall.com



**PUBLIC PROTECTION CABINET**
**DEPARTMENT OF FINANCIAL INSTITUTIONS**

Steven L. Beshear
Governor

1025 Capital Center Drive, Suite 200
Frankfort, KY 40601
Phone: (502) 573-3390
Fax: (502) 573-8787
www.kfi.ky.gov

Robert D. Vance
Secretary

Charles A. Vice
Commissioner

March 11, 2013

Western Sky Financial, LLC
P.O. Box 370
Timber Lake, SD 57656
Email: info@westernsky.com

RE:  *Joyce M. Patton,*

To Whom It May Concern:

To protect citizens of the Commonwealth of Kentucky, the Department of Financial Institutions is responsible for regulating and examining consumer loan company businesses and to ensure compliance with all statutory requirements. This charge can be found in Chapter 286.4 of the Kentucky Revised Statutes ("KRS"), applicable administrative regulations, and relevant interpretative authority.

Recently, it was discovered that your company, Western Sky Financial, LLC, entered into a consumer loan company transaction with a Kentucky resident. Our records show that your company is not licensed by this Department to engage in the business of providing consumer loan transactions. Therefore, your company has violated KRS 286.4-420 which states that "No person shall, without first obtaining a license from the commissioner, engage in the business of making loans in the amount or of the value of fifteen thousand ($15,000) or less at a greater rate of interest *(usury)*, or consideration therefor than otherwise permitted by law." Additionally, KRS 286.4-991(1) states, in part, that ". . . any loan contract made in violation of this subtitle shall be void and the lender shall have no right to collect any principal, charges or recompense whatsoever." Therefore, in accordance with KRS Chapter 286.4, Western Sky Financial, LLC shall cease and desist its attempts to enforce the terms of all consumer loan company agreements entered into with Kentucky residents including, but not limited to, all efforts to collect money from Kentucky residents pursuant to said agreements. Furthermore, Western Sky Financial, LLC shall cease and desist from entering into new consumer loan company transactions with Kentucky residents from this point forward.

Please be advised that per KRS 286.4-991(1) that, "Any person who shall engage in the business regulated by this subtitle without first securing a license therefor shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than five hundred dollars ($500) nor more than five thousand dollars ($5,000). . . ."

If you have questions or wish to discuss these matters further, please contact me at (800) 223-2579, Ext. 256.

Sincerely,

Andrew Calvert
Consumer Protection Branch
Division of Non-Depository Financial Institutions

cc:     *Joyce Patton,*          custserv@cashcall.com



PUBLIC PROTECTION CABINET
DEPARTMENT OF FINANCIAL INSTITUTIONS

1025 Capital Center Drive, Suite 200
Frankfort, KY 40601
Phone: (502) 573-3390
Fax: (502) 573-8787
www.kfi.ky.gov

Steven L. Beshear
Governor

Robert D. Vance
Secretary

Charles A. Vice
Commissioner

*October 07, 2013*

**Delbert Services Corporation**
**7125 Pollock Dr.**
**Las Vegas, NV 89119**

RE:  Irvin Brohammer,

To Whom It May Concern:

To protect citizens of the Commonwealth of Kentucky, the Department of Financial Institutions is responsible for regulating and examining consumer loan company businesses and to ensure compliance with all statutory requirements. This charge can be found in Chapter 286.4 of the Kentucky Revised Statutes ("KRS"), applicable administrative regulations, and relevant interpretative authority.

Recently, it was discovered that your company, Delbert Services, entered into a consumer loan company transaction with a Kentucky resident. Our records show that your company is not licensed by this Department to engage in the business of providing consumer loan transactions. Therefore, your company has violated KRS 286.4-420 which states that "No person shall, without first obtaining a license from the commissioner, engage in the business of making loans in the amount or of the value of fifteen thousand ($15,000) or less at a greater rate of interest *(usury)*, or consideration therefor than otherwise permitted by law." Additionally, KRS 286.4-991(1) states, in part, that ". . . any loan contract made in violation of this subtitle shall be void and the lender shall have no right to collect any principal, charges or recompense whatsoever." Therefore, in accordance with KRS Chapter 286.4, Delbert Services shall cease and desist its attempts to enforce the terms of all consumer loan company agreements entered into with Kentucky residents including, but not limited to, all efforts to collect money from Kentucky residents pursuant to said agreements. Furthermore, Delbert Services shall cease and desist from entering into new consumer loan company transactions with Kentucky residents from this point forward.

*Delbert Services Corporation*
October 07, 2013
Page Two

Please be advised that per KRS 286.4-991(1) that, "Any person who shall engage in the business regulated by this subtitle without first securing a license therefor shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than five hundred dollars ($500) nor more than five thousand dollars ($5,000). . . ."

If you have questions or wish to discuss these matters further, please contact me at (800) 429-3290, Ext. 230.

Sincerely,

Todd Toller
Consumer Protection Branch
Division of Non-Depository Financial Institutions

cc:     Irvin Brohammer,

## <u>Statement of Interest by Wisconsin Plaintiffs</u>

1. This statement is being submitted on behalf of objector, Lisa Walker, one of named Plaintiffs in the Wisconsin case against CashCall, Inc. *Williams, et al v. CashCall, Inc.*, 14-cv-903-WED (E.D. Wis.).

2. Plaintiffs commenced this action on June 20, 2014 in the Circuit Court of Milwaukee County, Wisconsin. Defendant removed the action to federal district court on July 30, 2014 pursuant to CAFA, 28 U.S.C. § 1332(d)(2), (4).

3. Defendant filed a motion to dismiss on August 6, 2014 which was granted and denied in part on March 17, 2015 (D.E. 36). Plaintiff has appealed the March decision as it relates to the dismissal of the case as to Plaintiff Williams. That appeal is pending before the Seventh Circuit Court of Appeals (15-2699).

4. Issues related to the tribal arbitration clauses have already been resolved by the Seventh Circuit, due to prior litigation. See *Jackson v. Payday Financial*, 764 F.3d 765 (7th Cir. 2014).

5. Discovery has been largely completed and Plaintiffs have moved for class certification (D.E. 65). CashCall received an extension of time to reply to class certification, with their response due on December 9, 2015. The proposed Wisconsin class is defined as follows:

   > All Wisconsin persons who entered into a consumer loan with Defendant CashCall in the past two years or made a payment on a consumer loan to Defendant CashCall in the past year, to the date of filing of the Complaint.

6. Plaintiffs will be amending their class definition to propose a class defined as:

   > All Wisconsin persons who entered into a consumer loan with Defendant CashCall , or serviced by Defendant CashCall, in the past two years or made a payment on a consumer loan serviced by Defendant CashCall in the past year, to the date of filing of the Complaint.

7. Wis. Stat. §138.09(1m)(a) states that "[b]efore any person may do business under this section, charge the interest authorized by sub. (7), or assess a finance charge on a consumer loan in excess of 18% per year, that person shall first obtain a license from the division [of banking]." While CashCall applied for this license, it was never granted by the State of Wisconsin. CashCall charges more than 18% interest on each and every loan they serviced to over 5,000 Wisconsin consumers.

8. Pursuant to Wis. Stat. § 425.305, the consumer loan agreements between the parties must be voided and Plaintiffs and Wisconsin class members are entitled to retain any funds received under the agreement without an obligation to pay any amount. Plaintiffs and Wisconsin class members shall also be entitled to recover any sums paid to the Defendant under the agreement.

9. The proposed settlement in *Heldt, et al v. Payday Financial, et al* is wholly inadequate, in that is does not afford several key remedies to Wisconsin consumers: retention of the loan proceeds, recovery of sums paid on the loans and voiding of the loan agreements.

10. Given the fact that the loans serviced by CashCall are clearly illegal and unenforceable, the proposed settlement is woefully inadequate in that Wisconsin consumers have a right to the loans being voided. Allowing the contracts to be reformed to 18% interest deprives Wisconsin consumers from the relief granted by Wis. Stat. § 425.305.

Respectfully submitted,

s/Nathan DeLadurantey
Nathan E. DeLadurantey
Heidi N. Miller
DELADURANTEY LAW OFFICE LLC
735 W. Wisconsin Avenue, Suite 720
Milwaukee, WI 53233
(414) 377-0515; (414) 755-0860 – Fax

Thomas J. Lyons, Jr.
CONSUMER JUSTICE CENTER, P.A.
367 Commerce Court
Vadnais Heights, MN 55127
(651) 770-9707; (651) 704-0907 – Fax
*Counsel for Plaintiff*

Dated: November 17, 2015

# DECLARATION OF LISA WALKER

I, Lisa Walker, pursuant to 28 U.S.C. § 1746 hereby declare under penalty of perjury the following is true and correct:

1. My name is Lisa Walker and I am over twenty-one years of age and am fully competent to make the statements contained herein. I am a resident of Milwaukee, Wisconsin and am one of the Plaintiffs in the case of *Williams v. CashCall,* 14-cv-903-WED (E.D. Wis.) that was filed in Wisconsin.

2. In 2011, I was struggling financially and received a loan from Western Sky in the amount of $2,525 with an interest rate of 139.12%. This loan was then serviced by CashCall.

3. Because of the extremely high interest rates, I was unable to pay the amounts due.

4. Eventually, CashCall agreed to refinance my loan at a lower interest rate of 89% in July, 2012.

5. My lawyers have sued for me in Wisconsin, on behalf of myself and the other affected Wisconsin residents.

6. I have been told that now, CashCall is trying to make a settlement in a case in South Dakota that will impact my case. Based on documents filed with the South Dakota court, none of the Plaintiffs live in Wisconsin.

7. I do not believe people that do not live in Wisconsin can adequately represent me or other Wisconsin residents. They do not live in Wisconsin, nor did they take out a loan serviced by CashCall that is subject to Wisconsin law.

8. I understand that as a Wisconsin resident that I have specific legal remedies as to CashCall.

1

9.      I am told the proposed settlement would not declare that all of the Western Sky loans serviced by CashCall are illegal and void and unenforceable. This is wrong, because I believe they plainly are illegal and void in Wisconsin. I oppose a settlement that would keep the loans somehow legal, because it would do a great injustice to me and all people in Wisconsin.

10.     I am also told that in the proposed settlement, a borrower had to pay back the full loan plus over 18% interest to receive even a part of a refund. I do not believe this is adequate to pay back the victims, because under Wisconsin law all payments made must be refunded.

11.     CashCall broke the law of Wisconsin's usury statutes and they must be held accountable. Now that they have been caught, they want to cut a deal in this proposed settlement and not be held accountable for their actions. Wisconsin has laws that were designed to protect consumers like myself, and CashCall must be held accountable to those laws.

12.     Under the settlement, apparently I would not get any refund because to get one I would have to pay over the balance of the loan at 18% interest. This settlement does not comply with Wisconsin law.

13.     I believe the proposed settlement should not include anyone in Wisconsin. Only someone from Wisconsin should represent the people in Wisconsin, and we are entitled to a better settlement and for the loans to be void.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated this 17th day of November, 2015

Lisa Walker

Lisa Walker

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| CHAD MARTIN HELDT,<br>CHRISTI SONJA JONES, and<br>CHERYL A. MARTIN, individually and on<br>Behalf of all similarly situated individuals,<br><br>    Plaintiffs,<br><br>v.<br><br>PAYDAY FINANCIAL, LLC, d/b/a<br>Lakota Cash and Big Sky Cash;<br>WESTERN SKY FINANCIAL, LLC, d/b/a<br>Western Sky Funding, Western Sky, and<br>Westernsky.com;<br>CASHCALL, INC; and<br>WS FUNDING, LLC;<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **Statement of Interest by Georgia Plaintiffs**

### 1.

This statement is being submitted on behalf of objector, Joshua Parnell, the named Plaintiff in the Georgia case against CashCall, Inc. styled: <u>Joshua Parnell, individually and on behalf of all others similarly situated, v. Western Sky Financial, LLC. d/b/a Western Sky Funding, Western Sky, and Westernsky.com; Martin A.</u>

("Butch") Webb; and CashCall, Inc., United States District Court for the Northern

District of Georgia, Rome Division, Civil Action Number 4:14-CV-0024-HLM.

<div align="center">2.</div>

Plaintiff commenced this action on November 27, 2013 in the Superior

Court of Whitfield County, Georgia. Defendant CashCall, Inc. ("CashCall")

removed the action to the Federal District Court on February 12, 2014 pursuant to

Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).

<div align="center">3.</div>

CashCall filed a motion to dismiss based on *forum non conveniens* on

February 19, 2014 [*Doc. 2*] and a separate motion to compel arbitration and

dismiss or stay the action [*Doc. 3*] the same day.

<div align="center">4.</div>

Plaintiff filed an Amended Complaint on March 4, 2014 [*Doc. 12*], thereby

mooting CashCall's previously filed motions to dismiss. CashCall renewed its two

motions to dismiss on March 18, 2014. [*Docs. 18 and* 19].

<div align="center">5.</div>

The issues were fully briefed by the parties, and the District Court denied

both of Defendant's motions on April 28, 2014. [*Doc. 25*].

<center>6.</center>

CashCall sought an appeal on the denial of both motions in the Eleventh Circuit Court of Appeals. [*Docs.* The Eleventh Circuit denied Defendant's appeal of the motion based on *forum non conveniens* but granted the appeal as to the denial of the motion to compel arbitration.

<center>7.</center>

The issues surrounding the motion to compel arbitration were fully briefed by the parties and oral argument before the Eleventh Circuit was held on July 30, 2015.

<center>8.</center>

The Eleventh Circuit issued its opinion reversing the District Court's order denying Defendant's motion to compel arbitration and remanding the case on October 28, 2015.  See Parnell v. CashCall, Inc., 2015 WL 6504332 (11th Cir. Oct. 28, 2015).

<center>9.</center>

The Eleventh Circuit stated in its opinion at *6, "[a]s this case remains in its pre-trial stages, Parnell may still seek leave from the district court to amend his complaint to reflect a proper challenge to the delegation provision."

10.

Plaintiff is in the process of filing his Motion To Amend Plaintiff's Complaint to properly challenge the delegation clause of the parties' contractual arbitration provision currently.

11.

The proposed Georgia class is defined as:

> All persons, while residing in the State of Georgia, with whom Defendants Western Sky Financial, LLC, CashCall, Inc. and/or Martin A. "Butch" Webb entered into loan agreements and/or loaned funds and/or received payments from said Georgia residents.

*[Doc. 12 ¶ 90]*.

12.

The Georgia Payday Lending Act, OCGA § 16-17-2, states:

> (a) It shall be unlawful for any person to engage in any business, in whatever form transacted, including, but not limited to, by mail, electronic means, the Internet, or telephonic means, which consists in whole or in part of making, offering, arranging, or acting as an agent in the making of loans of $3,000.00 or less unless:
>
> > (1) Such person is engaging in financial transactions permitted pursuant to:
> >
> > > (A) The laws regulating financial institutions as defined under Chapter 1 of Title 7, the "Financial Institutions Code of Georgia";

(B) The laws regulating state and federally chartered credit unions;

(C) Article 13 of Chapter 1 of Title 7, relating to Georgia residential mortgages;

(D) Chapter 3 of Title 7, the "Georgia Industrial Loan Act";

(E) Chapter 4 of Title 7, relating to interest and usury;

(F) Chapter 5 of Title 7, "The Credit Card and Credit Card Bank Act," including financial institutions and their assignees who are not operating in violation of said chapter; or

(G) Paragraph (2) of subsection (a) of Code Section 7-4-2 in which the simple interest rate is not greater than 16 percent per annum;

(2) Such loans are lawful under the terms of:

(A) Article 1 of Chapter 1 of Title 10, "The Retail Installment and Home Solicitation Sales Act";

(B) Article 2 of Chapter 1 of Title 10, the "Motor Vehicle Sales Finance Act"; or

(C) Part 5 of Article 3 of Chapter 12 of Title 44, relating to pawnbrokers[.]

13.

CashCall is not engaged in financial transactions permitted under OCGA §§

7-1-1 *et seq.*, the Financial Institutions Code of Georgia; is not engaged in financial

transactions permitted under the laws regulating state and federally chartered credit unions; and is not engaged in financial transactions permitted under OCGA §§ 7-1-1000 *et seq.* relating to Georgia residential mortgages.

14.

Further, Georgia law states at OCGA § 7-4-2(a)(2) that:

> Where the principal amount involved is $3,000.00 or less, such rate shall not exceed 16 percent per annum simple interest on any loan, advance, or forbearance to enforce the collection of any sum of money unless the loan, advance, or forbearance to enforce the collection of any sum of money is made pursuant to another law.

15.

The loan issued to Plaintiff Joshua Parnell bore an interest rate of 232.99%.

16.

Georgia Law further states, at OCGA § 16-17-3:

> Any person who violates subsection (a) or (b) of Code Section 16-17-2 shall be barred from the collection of any indebtedness created by said loan transaction and said transaction shall be void *ab initio*, and any person violating the provisions of subsection (a) or (b) of Code Section 16-17-2 shall in addition be liable to the borrower in each unlawful transaction for three times the amount of any interest or other charges to the borrower. A civil action under Code Section 16-17-2 may be brought on behalf of an individual borrower or on behalf of an ascertainable class of borrowers. In a successful action to enforce the provisions of this chapter, a court

shall award a borrower, or class of borrowers, costs including reasonable attorneys' fees.

17.

Thus, pursuant to the Georgia statutes cited *supra*, the consumer loan agreements between the Georgia Plaintiff Joshua Parnell and all other Georgians and Defendant CashCall must be voided and Plaintiff and the Georgia class members are entitled to retain any funds received under the agreement without an obligation to pay any amount. Plaintiff and the Georgia class members shall also be entitled to recover three times the amount of any interest or other charges paid to CashCall.

18.

The proposed settlement in <u>Heldt, *et al*. v. Payday Financial, *et al*</u>. is wholly inadequate, in that is does not afford several key remedies to Georgia consumers: retention of the loan proceeds, recovery of three times the amount of any interest or other charges paid, and voiding of the loan agreements.

19.

Given the fact that the loans serviced by CashCall are clearly illegal and unenforceable, the proposed settlement is woefully inadequate in that Georgia consumers have a right to the loans being voided.

20.

The proposed settlement in Heldt, *et al*. v. Payday Financial, *et al*. of allowing the contracts to be reformed to 18% interest deprives Georgia consumers from the relief granted by OCGA § 16-17-3, and remains in violation of the 16% cap on such loans under OCGA § 7-4-2(a)(2).

Respectfully submitted, this 18th day of November, 2015.

**HURT STOLZ, P.C.**


s/  James W. Hurt, Jr.
By:  James W. Hurt, Jr.
Georgia Bar No. 380104


345 West Hancock Avenue
Athens, Georgia 30601
(706) 3895-2750
Facsimile:  (866) 766-9245
jhurt@hurtstolz.com                    **ATTORNEY FOR PLAINTIFF**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| CHAD MARTIN HELDT, | ) |
| CHRISTI SONJA JONES, and | ) |
| CHERYL A. MARTIN, individually and on | ) |
| Behalf of all similarly situated individuals, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| PAYDAY FINANCIAL, LLC, d/b/a | ) |
| Lakota Cash and Big Sky Cash; | ) |
| WESTERN SKY FINANCIAL, LLC, d/b/a | ) |
| Western Sky Funding, Western Sky, and | ) |
| Westernsky.com; | ) |
| CASHCALL, INC; and | ) |
| WS FUNDING, LLC; | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DECLARATION OF JOSHUA PARNELL

I, Joshua Parnell, pursuant to 28 U.S.C. § 1746 hereby declare under penalty of perjury the following is true and correct:

1.

My name is Joshua Parnell and I am over twenty-one years of age and am fully competent to make the statements contained herein. I am a resident of the State of Georgia and am the named Plaintiff in the case of *Joshua Parnell, individually and on behalf of all others similarly situated, v. Western Sky Financial,*

LLC. d/b/a Western Sky Funding, Western Sky, and Westernsky.com; Martin A. ("Butch") Webb; and CashCall, Inc., United States District Court for the Northern District of Georgia, Rome Division, Civil Action Number 4:14-CV-0024-HLM.

2.

In our about June of 2012, I was watching television in the state of Georgia and saw a television advertisement for Western Sky and its website, westernsky.com.

3.

I had recently completed his service with the United States Army and was in a financially complicated period, so I was interested in the short-term loans being advertised by the Defendants.

4.

I accessed the website westernsky.com from my computer in Georgia and completed an online application for a loan and I submitted my loan application online.

5.

Within ten minutes of submitting his application online at westernsky.com, I received a phone call from a Western Sky or CashCall employee who stated that I had been approved for a loan in the amount of one thousand dollars ($1,000.00).

6.

The Western Sky or CashCall employee told me to check my email for a document which would request my digital signature. I received a document entitled "Western Sky Consumer Loan Agreement" dated June 6, 2012 (herein, the "Parnell Loan Agreement").

7.

The Parnell Loan Agreement stated that, "You further agree that you have executed the Loan Agreement as if you were physically present within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation; and that this Loan Agreement is fully performed within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation." Id.

8.

The Parnell Loan Agreement provided that I would receive a loan in the amount of one thousand dollars ($1,000.00), be subject to a "prepaid finance charge/origination charge" of five hundred dollars ($500.00), and interest calculated at 149.00 % per annum. Id.

9.

The Parnell Loan Agreement included a "Truth In Lending Act Disclosure Statement" which states that the annual percentage rate is 232.99%, the finance charge totals three thousand nine hundred five dollars and fifty six cents ($3,905.56), bringing the total amount of payments to four thousand nine hundred five dollars and fifty-six cents ($4,905.56). Id.

10.

The Parnell Loan Agreement also states that I shall make my first payment in the amount of one hundred forty-nine dollars ($149.00) due on July 1, 2012 and then 24 monthly payments of one hundred ninety-eight dollars and nineteen cents ($198.19) beginning on August 1, 2012. Id.

11.

I digitally signed the Parnell Loan Agreement, and within 72 hours received a direct deposit of funds in the amount of one thousand dollars ($1,000.00) into my bank account in the state of Georgia.

12.

Further in June of 2012, I received notice from CashCall that CashCall was now servicing my loan from Western Sky, and that all of my payments shall be made to CashCall.

$\widehat{AR}$ 11/18

### 13.

I made all of his loan payments to CashCall.

### 14.

My lawyers have sued for me in Georgia, on behalf of myself and the other affected Wisconsin residents.

### 15.

I have been told that now, CashCall is trying to make a settlement in a case in South Dakota that will impact my case. Based on documents filed with the South Dakota court, none of the Plaintiffs live in Georgia.

### 16.

I do not believe people that do not live in Georgia can adequately represent me or other Georgia residents. They do not live in Georgia, nor did they take out a loan serviced by CashCall that is subject to Georgia law.

### 17.

I understand that as a Georgia resident that I have specific legal remedies as to Cash Call.

### 18.

I am told the proposed settlement would not declare that all of the Western Sky loans serviced by CashCall are illegal and void and unenforceable. This is wrong, because I believe they plainly are illegal and void in Georgia. I oppose a

Add. 137

settlement that would keep the loans somehow legal, because it would do a great injustice to me and all people in Georgia.

19.

I am also told that in the proposed settlement, a borrower had to pay back the full loan plus over 18% interest to receive even a part of a refund. I do not believe this is adequate to pay back the victims, because under Georgia law all payments made must be refunded.

20.

CashCall broke the law of Georgia usury statutes and they must be held accountable. Now that they have been caught, they want to cut a deal in this proposed settlement and not be held accountable for their actions. Georgia has laws that were designed to protect consumers like myself, and CashCall must be held accountable to those laws.

21.

Under the settlement, apparently I would not get any refund because to get one I would have to pay over the balance of the loan at 18% interest. This settlement does not comply with Georgia law.

JLP 11/18

22.

I believe the proposed settlement should not include anyone in Georgia. Only someone from Georgia should represent the people in Georgia, and we are entitled to a better settlement and for the loans to be void.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated, this 18th day of November, 2015.

Joshua Parnell