IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| CHAD MARTIN HELDT, CHRISTI W. JONES, SONJA CURTIS, and CHERYL A. MARTIN, individually and on behalf of all similarly situated individuals<br>     Plaintiffs,<br>v.<br><br>PAYDAY FINANCIAL, LLC, d/b/a Lakota Cash and Big Sky Cash; WESTERN SKY FINANCIAL, LLC, d/b/a Western Sky Funding, Western Sky, and Westernsky.com; CASHCALL, INC; and WS FUNDING, LLC,<br>     Defendants. | * * * * * * * * * * * * * * * | Case 3:13-cv-3023-RAL |

## DECLARATION OF NAMED CLASS REPRESENTATIVE CHRISTI W. JONES

I, Christi W. Jones, formerly known as Christi W. Trusevich, hereby declare as follows:

1. I am a named class representative in this lawsuit. I do not believe that the settlement is fair, adequate, or reasonable.

2. The written terms of the settlement agreement do not include a secret side deal. The side deal is that CashCall promises not to collect any further on the loans to the four plaintiffs. In the written settlement agreement, CashCall says the class member loans are being rewritten as 18% interest loans that CashCall can still collect on. But to pressure the four plaintiffs to accept the settlement, my lawyers who are asking to be appointed as class counsel, told us that CashCall promised not to collect on what would still be owed on our loans under the terms of the settlement agreement. I think this is not fair to all of the other people who CashCall took advantage of and all the loans should be written off-- all the class members should get at least the same deal we are getting.

3. For background, the loan I received from Western Sky was $2,525 after fees. According to my records, I have already paid back $3,687.27 on the loan. One of my big concerns in this case was that I would not owe any more on the loan.

4. My lawyers sent me an email announcing a settlement and explaining the terms on August 13, 2015. The settlement terms then included that my loan would be

1



considered satisfied in full, I would get an additional cash payment from a common settlement fund, and I would also get $5000 for my trouble and time as a class representative as an incentive award.

5. I agreed to this deal in an email I sent on August 13, 2015.

6. Later, on October 19, 2015, my lawyers sent me an email setting forth the terms of the settlement agreement along with the long written settlement agreement to review, sign and return within 24 hours. I noticed right away that the terms of the settlement as set forth in the email differed from what I agreed to on August 13, 2015. Additionally, when I read the settlement agreement, I could not tell from the language in the agreement if they were considering my loan satisfied in full as I was promised. The settlement agreement seemed vague and contradictory to me.

7. I asked for the lawyers to confirm to me exactly how the numbers would work under the settlement for my loan so that I could fully understand what appeared to be glaring differences in what I agreed to and what I was being asked to sign.

8. By my own calculation, I had paid back the loan plus 18% and more, so I would get $127.02 from the common fund. My calculations were:
   - Original funds received:            $2,525 (48 month term)
   - Total interest (18% for 48 months): $1,035.25
   - Total amount due:                   $3,560.25
   - Less amount I had paid:             $3,687.27
   - My amount of overpayment:           $127.02

9. To my great surprise, I was then told that I would still owe under a modified loan. I would owe a monthly payment of $294.46 on an 18% loan with a maturity date of August 2016. This came in an email from the defense lawyers that was forwarded to me and dated October 21, 2015. When I questioned my lawyers as to how this could possibly be correct as it completely contradicts what I originally agreed to on August 13, 2015 as well as the terms of the agreement as set forth in the email that was attached to the Settlement Agreement, my own lawyer responded that I could use my $5000 class representative incentive award to pay off the loan.

10. I was very upset with this because it was totally different from what I was told before. I wrote back to my lawyers that this was not what I had agreed to.

11. I had a call with my lawyers on October 21, 2015. I told them that I could not understand the settlement agreement. I told them that I was upset that what was being explained to me now was different from what I was told before. My lawyers were not even able to explain to me how the settlement agreement was supposed to work. In fact, one of my attorneys, told me that the settlement would go forward whether I liked it or not and that if they didn't take this deal, CashCall

2

would be able to continue just taking advantage of people and charging whatever interest rate it wants.

12. The next day, October 22, 2015, my lawyers talked to me again and told me words to this effect: "For whatever reason, I don't know, CashCall won't put in it in writing, but your loan is in a special bucket of what they term uncollectible loans. They have reassured me that they will not collect on your loan." Shortly after this phone call I received an email again asking me to sign and forward the settlement agreement by the next morning. Feeling that I had no voice and under pressure, I finally signed the settlement agreement that the Court now has.

13. Since then, I have tried to check with the other plaintiffs to see if they were as concerned as I was. I asked Chad Heldt and he told me the same thing I was told – he was promised he would never owe any more on his loan. Chad said he refused to sign the settlement until he was promised that he would not have a reinstated loan at 18% that he would still owe.

14. Chad got a loan from Western Sky of $9,925. All he ever paid back was $891.82. If he was bound to the terms of the written settlement agreement like all the class members, then he would still owe money on a loan at 18%. But instead, like me, he has a special "side deal" promise that they will let his loan go.

15. By my calculation, here is how Chad Heldt's loan would come out if he was treated the way the written settlement agreement says, instead of the secret side deal:
    - Original funds received:           $9,925 (84 month term)
    - Total interest (18% for 84 months): $7,597.57
    - Total amount due:                   $17,522.57
    - Less amount I had paid:             $891.82
    - Amount he still owes:               $16,630.75

16. I also talked to Sonja Curtis. She had the same story as Chad. She questioned the modification of her loan and said that she would not sign the settlement agreement if she were to owe anything. She was told that she would not owe anything more on her loan.

17. This, again, is contradictory to the settlement agreement being imposed on every class member. Sonja borrowed $5000 and received $4,925 after fees. She paid back a total of $5,741.46. Under the settlement agreement by my calculation she would owe a total of $6,944.25 at 18% interest. So she would still owe $1,202.79. But because of the special side deal, she will get her loan written off.

18. After gaining this knowledge, it is now clear to me that CashCall is treating class members differently by not imposing the modified loans on class representatives (the four of us), but by imposing them on everyone else. It is clear to me that

CashCall is trying to push through a shady settlement and I am trying to blow the whistle and bring attention to this misconduct.

19. I don't believe any of the class members should have to pay modified loans with 18% interest. I don't think the so-called Tribal interest rate of 18% should apply to the loans. The class members should have the same deal as the class representatives.

20. I call to the Court's attention that the terms of the written settlement that was filed with the Court do not reflect the truth. The class members are being treated unfairly and would have no idea from the settlement agreement that the four named plaintiffs are getting a different deal.

21. Because of these developments I have terminated my old lawyers from representing me and I am now represented by a lawyer in Texas where I reside and local counsel in South Dakota who will represent me in this Court.

22. We have been told that the reason for the 18% interest rate in the settlement is the Tribal usury statute. I was never told that we were making a claim under Tribal law in our lawsuit and I do not understand how the entire country will be forced to apply a Tribal law when that was never even a claim in our lawsuit.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct. Executed this 15th day of December 2015 in Dallas, Texas.

*Christi W. Jones*
Christi W. Jones

State of Texas
County of Dallas

SWORN to and SUBSCRIBED before me, the undersigned authority on the 15th day of December, 2015 by Christi W. Jones.

*Shontill Williams*
Notary Public, State of Texas

SHONTILL WILLIAMS
Notary Public, State of Texas
My Commission Expires
October 14, 2017

4